## Ernest Turman v. The State.

### No. 3175.   Decided May 2, 1906.

**1.—Assault With Intent to Rape—Indictment.**

On trial for assault with intent to rape there was nothing in defendant's motion to quash the indictment.

**2.—Same—Continuance—Alibi—Clothing.**

Upon a trial for assault with intent to rape where the motion to continue did not show that either of the absent witnesses knew of defendant's whereabouts at the time of the alleged assault, etc.; or that the testimony of either was material as to what they would testify to regarding the clothing, hat or cap of defendant, or as to how they came to know them, and that defendant could not have changed his clothing, etc., the application was correctly refused.

**3.—Same—Postponement—Imputing Crime to Another.**

Where an application to postpone showed that the absent witness would swear he met a person wearing clothes somewhat similar to those described by the prosecutrix at the time of the alleged occurrence, about two miles therefrom, going in the direction thereto, this would not have constituted material testimony that some person other than the defendant might have committed the offense.

**4.—Same—Evidence—Motive.**

Upon a trial for assault with intent to commit rape there was no error to admit testimony that the house in which the alleged assault occurred was closed when witness left it that morning; and the fact that this testimony might suggest that defendant in entering said house had committed burglary would not render it inadmissible.

**5.—Same—Evidence—Res Gestae—Condition of Prosecutrix.**

Upon trial for assault with intent to rape there was no error in permitting the prosecutrix to testify that just before her mother reached her she fainted and became unconscious, and that this occurred a very short time after the assault upon her was committed by defendant. This testimony was admissible as res gestæ and to show the condition of prosecutrix after the assault.

**6.—Same—Identification of Defendant—Fainting of Witness.**

Upon a trial for assault with intent to rape the prosecutrix was permitted to testify that as soon as she identified defendant as the man who assaulted her, the

officers who had defendant in charge for the purpose of identification started out of the room with him, and that witness then fainted, and the court qualified defendants bill to the effect that on cross-examination the defense asked prosecutrix whether she made any reply when the sheriff asked her to be certain whether defendant was the right man, and that she made no reply, and that the State was permitted to show in rebuttal that prosecutrix fainted before defendant was taken out of the room and could not reply. Held that all of this testimony was inadmissible. Overruling Bruce v. State, 31 Texas Crim. Rep., 590. Distinguishing Reddick v. State, 35 Texas Crim. Rep., 463.

**7.—Same—Evidence—Act of Third Party.**

Upon a trial for assault with intent to rape it was error to admit testimony that a day or two after the alleged assault the witness heard screaming in a room where he last saw prosecutrix; the State offering this testimony to show that prosecutrix screamed and fainted after identifying defendant and to account for her failure to reply to the sheriff. But being the act of a third party defendant was in no wise responsible, and it was not proper evidence of identification.

**8.—Same—Impeaching Witness—Moral Turpitude.**

It was competent for the State to impeach defendant after he had taken the stand as a witness, by showing that he had been charged with and prosecuted for other offenses involving moral turpitude.

**9.—Same—Condition of Prosecutrix.**

Upon trial for assault with intent to rape it was competent for the State to show the condition of prosecutrix on the night of and after the assault by defendant.

**10.—Same—Opinion of Witness.**

Upon trial for assault with intent to rape it was not admissible to show by a States witness on cross-examination by defense if there were not some other negroes suspected of the assault than defendant.

**11.—Same—Introduction of Corset—Evidence.**

Where upon a trial for assault with intent to rape the evidence showed the tearing of the corset-cover of prosecutrix by appellant, there was no error in admitting the same in evidence to prove its condition.

**12.—Same—Experiments—Evidence—Cross-Examination of Defendant.**

Notwithstanding an accused becomes a witness on his own behalf he cannot be compelled to undergo an experiment before the jury to be used as evidence; and it was error to require a defendant to place a cap on his head for the purpose of identification, although he took the witness stand voluntarily and was subject to cross-examination. Discussing Gallaher v. State, 28 Texas Crim. App., 280; Bruce v. State, 31 Texas Crim. Rep., 590.

**13.—Same—Defendant as Witness.**

Upon a trial for assault with intent to rape it was not competent for appellant to prove by a witness that defendants statement on the witness stand was similar to statements previously made by him; there being no facts in the record that defendant's statement as a witness had been challenged or impeached.

Appeal from the District Court of Wood. Tried below before Hon. R. W. Simpson.

Appeal from a conviction of assault with intent to rape; penalty, twenty-five years imprisonment in the penitentiary.

The indictment charges the defendant, "that he did then and there unlawfully make an assault with intent then and there to commit rape in and upon one Mrs. Willie Bateman, a woman, by then and there attempting by force, threats and fraud to ravish and have carnal knowledge of the said Mrs. Willie Bateman without her consent, against the peace and dignity of the State."

The opinion states the case.

No brief for appellant has reached the hands of the Reporter.

*J. E. Yantis,* Assistant Attorney-General, *B. C. Merriman & M. D. Carlock,* for the State.

HENDERSON, JUDGE.—Appellant was convicted of an assault with intent to commit rape, and his punishment assessed at twenty-five years confinement in the penitentiary; hence this appeal.

The State's case is to the effect that prosecutrix, between 12 and 1 o'clock on the 25th of December, 1905, left her brother's (Lee Blaylock), who lived some four hundred yards from her father's (W. R. Blaylock), to go to the latter's house, where she had been living before she married (which was several weeks before the alleged rape), to change her dress. That while she was there alone, and while changing her dress, some one seized her by the waist, and when she turned, the person whom she recognized as appellant, had a butcher knife, which belonged on the place, raised as if to strike. She screamed and jerked loose from appellant, tearing her corset-cover, which appellant had hold of, and ran from the house; not seeing appellant afterwards. She ran screaming toward's her brother's, and on the way met her mother, and Mrs. Perrin, about half-way between the two houses. The alarm was given and appellant was arrested that night or the next day, and prosecutrix identified him as the party assaulting her. Appellant's theory was an alibi. This is a sufficient statement of the case to discuss the assignments of error.

There is nothing in appellant's motion to quash the indictment.

After the case had gone to trial appellant filed a motion to postpone or continue the case on account of the absence of Jim Turman and Bethena Turman. This was contested on the part of the State. Bethena Turman was subpœnaed, and it is alleged she was sick and unable to attend at the time of the trial. Jim Turman was not subpœnaed. During the excitement he had been notified to leave, and could not be found in the county. By both of said witnesses it was alleged that appellant expected to prove certain facts tending to show an alibi; that is, that he was at the place where Bethena Turman was some time before the alleged assault to rape, and that he was at Jim Turman's some time after 'the alleged assault. By neither of said witnesses does it appear that he proposed to prove his whereabouts at the time the alleged assault was committed; and the facts show that he was near enough at either place, as alleged said witnesses would prove, to the place of the alleged assault, as to have been present at the time and place when it was stated they would testify. So, conceding the diligence, it does not occur to us that the testimony of said witnesses was material. Nor does it occur to us that the testimony of either of said witnesses was material as to what they would testify regarding the clothing of appellant. It is not stated what opportunity witnesses had of knowing the character

of clothing owned by appellant, and the statement in general terms that he did not have such clothes as described by prosecutrix, is not sufficient, without showing the facts suggesting knowledge on the part of the witnesses as to how they came to know the clothing owned by appellant. The same observations may be made with reference to his hat or cap. Appellant had ample time after Bethena Turman should have seen him before dinner to have changed his hat and clothing, and to have had on the clothes described by prosecutrix at the time the offense is alleged to have been committed. He also had time to change said clothing after the commission of said offense, before he is alleged to have appeared at Jim Turman's house. We do not think the application shows the testimony to have been material.

There was also an application made during the progress of the trial for the postponement of the case to procure the testimony of one Thompson. It is stated that said Thompson's testimony was newly discovered, and that he would swear he met a person wearing clothes somewhat similar to those described by the prosecutrix at the time of the alleged occurrence, about two miles therefrom, going in the direction that might have led to the house of W. R. Blaylock. No further proximity is shown as to this party to the scene of the alleged assault than two miles therefrom; and the mere fact that Thompson saw a party who had clothing on somewhat similar to those proved by prosecutrix to have been worn by the alleged assaulting party, would not have constituted material testimony. Before testimony that some person other than defendant may have committed the offense can be introduced, there must be some pertinent evidence showing that such other person was in such proximity to the offense as would make it reasonably probable that he might have been guilty of the same.

It was not error on the part of the court to have permitted W. R. Blaylock, while testifying on behalf of the State, to state that his house was closed when he left it that morning to go to Lee Blaylock's to eat dinner. The fact that testimony of this character might suggest that appellant in entering said house had committed burglary would not render this character of testimony inadmissible.

When Mrs. Willie Bateman (prosecutrix) was testifying in behalf of the State, she was asked: "Just before your mother reached you, after you had run away from your father's house, what happened to you?" To which she replied, "Just before my mother and Mrs. Perrin reached me I fainted, and became unconscious. The next thing I remember my mother was standing over me." Defendant objected because immaterial, irrelevant, and defendant ought not to be bound by the acts of Mrs. Bateman; not occurring in his presence; and that the act of fainting and becoming unconscious was a matter defendant could not be bound by, and would have a tendency to prejudice his rights; that the act of fainting of prosecutrix was foreign to the issues in this case, and tended to inflame the minds of the jury. The court explains the admission of this testimony by the following statement: "The testi-

mony was res gestæ. And further the State was compelled to show
the condition of Mrs. Bateman after the assault and up to the time
she made the statement to her mother (Mrs. Blaylock), in order to
show that statement admissible as res gestæ." We think this state-
ment of the court disposes of this matter. Unquestionably, if some one
had come to the house and found prosecutrix there in an unconscious
condition, this could have been proven. We think it was equally com-
petent to show that she ran from the house immediately on extricating
herself from her assailant, screaming, and when she had run about two
hundred yards therefrom, fainted. As explained by the court this was
a part of the res gestæ of the alleged offense. It could not have been but
a very short time before this occurred that the alleged assault was com-
mitted, and evidently her then condition was attributable to the assault.

While this same witness was on the stand, she was asked: "As soon
as you had told the officers that defendant was the man who assaulted
you, and they had started out of the room, with the defendant, what
happened to you?" To which she answered, "As soon as I identified
the negro man who assaulted me, and they started out of the room
with him, I fainted." Appellant objected to this testimony for the
following reasons, because immaterial and irrelevant; did not prove or
explain any issue; that defendant could not be bound by any of the
acts of Mrs. Bateman fainting; could only tend to prejudice defendant's
rights by inflaming the minds of the jury against him. Which objec-
tions were overruled. The court qualifies this bill, as follows: "That
on cross-examination defense asked witness if Mrs. Bateman made any
reply when the sheriff asked her to be certain whether defendant was
the right man; and the answer was that witness made no reply. Then
the court permitted the State, in rebuttal, to show by the witness that
she fainted before defendant was taken out of the room, thereby account-
ing for her failure to respond to the sheriff." In Bruce v. State, 31
Texas Crim. Rep., 590, this character of testimony appears to have
been admitted as original testimony; but in Reddick v. State, 35 Texas
Crim. Rep., 463, this question again came before the court, and was
thoroughly discussed. It was there held that the doctrine announced
in Bruce's case and some other cases mentioned, was overruled. In Red-
dick's case the State was permitted to prove as original evidence against
appellant in a rape case, that some time subsequent to the rape, the
sheriff stood some eight persons in a line at the jail, in the presence of
the prosecutrix, and asked her to pick out the party who had assaulted
her; that she selected appellant and immediately fainted. All this
testimony was objected to at the trial, and it was admitted against
appellant. On review by this court, it was held that this character of
testimony was not admissible as original evidence, and the circumstances
or exceptions were therein laid down which might render the identifica-
tion by prosecutrix of her assailant on a former occasion, admissible.
But no case was stated wherein it would be permissible to prove that
under such circumstances prosecutrix fainted. No doubt the learned

trial judge recognized the doctrine laid down in Reddick's case, subsequently followed in Clark v. State, 39 Texas Crim. Rep., 152; Murphy v. State, 41 Texas Crim. Rep., 120; Bowen v. State, 11 Texas Ct. Rep., 156; Moore v. State, 50 S. W. Rep., 942; but attempted to differentiate between said cases and the case at bar, showing in his explanation that the question here came up differently. That is, it will be seen no objection was here interposed by appellant to the admission in evidence against him by the State of the facts and circumstances tending to show a former identification of himself by prosecutrix, except that he objected to the fact that after prosecutrix had identified him she fainted. The court says this was rendered admissible because appellant in cross-examination asked prosecutrix when the sheriff said to her that this was a grave matter and to be certain as to whether she identified appellant, that she made no reply to this question—to prove that she fainted as showing why she made no reply. We believe that under the rule laid down as before stated, all of this testimony was inadmissible. Appellant had the right at any stage of the proceeding to interpose an objection to the State proceeding further with this character of testimony, and especially when the act offered by the State was of this damaging character. As was said in Reddick's case, supra, "this character of testimony was calculated very powerfully to induce the jury to believe that because prosecutrix fainted on recognizing defendant, one or two days afterward, therefore he must have been the man." The crucial point here was the identification of appellant as the guilty party. And the admission of any improper testimony bearing on this question was calculated to greatly imperil and jeopardize his rights.

In this connection we would refer to appellant's bill number 13, in which the same question was presented somewhat differently. When the witness Bob Butler was on the stand, on cross-examination by the State he was asked: "After Mr. Ray (the sheriff), told Mrs. Bateman that she ought to be certain he was the right man, is it not a fact that she fainted, and when you started out of the door, did you not hear something like a woman scream; and is it not a fact that this noise came from that part of the room where Mrs. Bateman was sitting when you saw her last?" To which question, witness answered, "I do not know whether Mrs. Willie Bateman fainted or not when I started out of the room. When I got to the door I heard some kind of a noise; it sounded a good deal like a woman scream, but I did not look around; I kept going. This noise came from that part of the room where Mrs. Bateman was sitting when I last saw her." This testimony was excepted to upon the same grounds as shown in the former bill. It will be seen here that this witness did not know anything about the fainting spell, but testified as to hearing a woman scream, but did not know it was prosecutrix, except from the circumstance the scream came from the part of the room where he last saw her. The explanation to the former bill is referred to as the court's explanation to this bill; that is it was permitted to be shown that prosecutrix screamed, which accounted

for her failure to reply to the sheriff. It may be true that a woman could scream and this would be a reason for her failure to reply to a question. Certainly if she fainted and screamed, this might afford some reason for her not answering the sheriff. But, as stated before, we believe all of this character of testimony was illegitimate, and appellant could interpose an objection thereto whenever he desired; and that the introduction of this character of affirmative testimony over his protest was calculated to strengthen the State's case on a very important issue, and thus to prejudice him; that prosecutrix fainted or screamed when she first saw defendant and identified him, a day or two after the alleged occurrence, might be regarded by the jury, as a very cogent circumstance corroborative of her identification; but it was illegal testimony and should not have been admitted against him. It was the act of a third party for which he was in no wise responsible, and was not proper evidence of identification; was of an affirmative character and injurious.

A number of other bills along the same line present the same question, showing that the State was using this character of testimony by a number of witnesses against appellant. It was evidently regarded as a very potential fact, otherwise it would not have been so persistently resorted to on the part of the State. The observations we have made with reference to the former bills apply equally to these.

Of course, it was competent for the State to impeach appellant, Ernest Turman, after he had taken the stand as a witness, by showing that he had been charged with and prosecuted for felonies or misdemeanors involving moral turpitude.

It was also competent for the State to show the condition of Mrs. Bateman on the night of December 25, 1905; that is, that she was suffering, and then in a prostrate condition. It occurs to us that the State was as much authorized to introduce this character of testimony as to have shown the physical condition of an assaulted party where physical wounds have been inflicted.

It was not admissible to show by witness Bob Bateman, who was introduced by the State on cross-examination by appellant, if there were not some other negroes suspected of having assaulted his sister-in-law, Mrs. Willie Bateman, than defendant. What he or others may have thought or suspected, was not a legitimate factor.

Under the circumstances indicated in bill of exceptions with reference to the introduction in evidence of the corset-cover to prove its condition, we think it was admissible.

We hold it was not permissible for the State to require appellant to place the cap on his head for the purpose of identification by prosecutrix, Mrs. Bateman. This was compelling defendant to undergo an experiment before the jury. True, he took the stand voluntarily, and was subject, as any other witness, to cross-examination; but this did not authorize the prosecution to require him to undergo an experiment. We have been unable to find any case exactly in point. A number of

cases are cited in Bruce v. State, 31 Texas Crim. Rep., 590, that would seem to militate against the views here expressed, but in none of them was the question here presented considered. In two of said cases the result of experiments made out of the court, without the consent of appellant appear to have been admitted in evidence by the court. While it is not necessary here to overrule those cases, we do not believe, notwithstanding an accused becomes a witness on his own behalf, he can be compelled by the court to undergo an experiment before the jury to be used as evidence. Gallaher v. State, 28 Texas Crim. App., 280; 5 Ency. of Ev., p. 501.

Without other facts in evidence then set out in bill No. 20, it was not competent for appellant to prove by a witness that appellant's statement on the stand was similar to statements previously made by him in regard to the charge of rape upon which he was being tried. Of course, if appellant's statement on the witness stand, or any part thereof, had been challenged, and he had been impeached in regard thereto, upon such point he might have been corroborated by testimony as to his statements.

We have examined the court's charge, and it occurs to us that it presented the essential features of the case properly. Nor do we believe there was any error in the court's failure to charge on other matters, and refusing the special requested instructions of appellant.

For the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Brooks, Judge, absent.