Douglas K. Monroe v. State

No. 29,798. May 28, 1958.

*Ronald J. Monesson* and *Edwin W. Carp*, San Antonio, for appellant.

*Hubert W. Green, Jr.*, Criminal District Attorney, *Edward R. Finck, Jr.*, and *H. F. Garcia*, Assistants Criminal District Attorney, San Antonio, and *Leon Douglas*, State's Attorney, Austin, for the state.

BELCHER, Judge.

The conviction is for murder; the punishment, 25 years.

The sufficiency of the evidence to support the conviction is challenged on the following grounds: (1) The evidence fails to identify the appellant as the assailant. (2) The evidence fails to show that the murder weapon was in fact a knife as alleged. (3) The evidence is insufficient to sustain a conviction for murder with malice.

The state relies upon circumstantial evidence to establish the offense charged and the court charged the jury upon the law applicable thereto.

The testimony of the state shows that while the deceased and another person were sitting at a table drinking beer in a tavern, appellant entered the tavern, ordered a glass of beer and went to deceased's table. In a short time appellant and the deceased began arguing and the deceased said, "Pull your knife, Monroe," but no knife was seen, then the tavern owner told Monroe to move to another place, drink his beer and leave. When appellant had drunk his beer he turned and said to the deceased, "I'm going to hurt you," and upon being asked again to leave replied, "Put him out, too (referring to the deceased)," and the tavern owner said, "I will" and in three or four minutes he put the deceased out on the street. The tavern owner testified that shortly after the deceased and Monroe left the building he heard them talking outside, and saw Monroe waving a "fish knife" toward the deceased, and then heard Ronald Lambert say, "Come on Monroe, let's go" and they left.

Ronald S. Lambert testified that as he was passing a bar about 7:30 p.m., he saw and heard the appellant and a man unknown to him arguing, that he heard one of them say, "I'll cut

your head off" and then he took appellant by the arm and they left.

Almeida Burch testified that about 10:30 p.m., while she and the deceased were walking to his apartment they "entered the driveway, proceeding to the rear of the premises to his apartment. A man dashed out of an apartment, screaming, 'I have been waiting for you son-of-a-bitch two or three hours; I'm going to stab you; I'm going to kill you.' Mooneyham told the man: 'Go on, Monroe, I want nothing to do with you. Just go on.' And we proceeded on to his apartment, and the man * * * followed us to his apartment," and attacked the deceased, "spun him about and threw one blow. I stepped between the two men, facing the man that was attacking him, saying, 'Monroe, go on, leave him alone.' He threw me aside." "He flung me aside. He says, 'You stay out of this; this has nothing to do with you.' And he stepped up to Melvin Mooneyham again and says: 'We have been friends quite some time, but this is where friendship ceases. I'm going to kill you, you son-of-a-bitch.'" "They began fighting and they struggled back and forth, and there was a last lick, which I could see the arm come down and Mooneyham was struck down. I then proceeded to help him up. He clutched his throat and asked me to call a doctor." "I went up to the front (of the building) again and said, 'The man is dead; Mooneyham is dead.'" "I saw this man run out again and said, 'You damn right, I stabbed him.'" She further testified that it was very dark, there were no lights in the driveway and that she was unable to identify the assailant.

The testimony of Florinda Portillo shows that at the time here in question she lived back of a house in an apartment facing a driveway which ran from the apartment in the rear by the house to the street. She identified the "defendant, Monroe" while testifying and stated that he lived in an apartment on the same driveway where she lived. She further testified that she knew and recognized appellant's voice on the night in question; that "I talked with Monroe" who was sitting on his porch when she walked along the dark driveway on her way home about 10:15 p.m. and he said, "Hi, I have been waiting here a long time," and that shortly after she entered her apartment "I heard Monroe holler to somebody out there, 'Wait up,' or something like that. And I don't recall exactly what he said. It sounded like 'Wait,' or 'Wait up,' or something. And then I heard him come off the porch and go around and I heard somebody go up that way, toward the driveway."

Salvador Chavarria testified that he lived back of a house in an apartment facing a driveway, and that about 10 p.m. he met the deceased and a woman he had seen during the trial at the entrance of the driveway; that as he entered his room he heard someone say, "I have been waiting here three hours," and the deceased said, "I don't want any part of this," then "Monroe" said, "I'm going to kill you." He testified further that he heard someone walking along the sidewalk, turn into a room, then leave, and while walking down the driveway say, "Damn right I cut him." He also testified that he had seen the appellant every day but while testifying said he could not see him in the court room.

According to the testimony of Teresa Espinosa the deceased lived in one of her apartments at the time in question, and that the appellant had been living there as a tenant for two years before the occasion in question but that she had known him for more than two years, and that she had had no other tenant by the name of Monroe. She further testified that she was acquainted with appellant's voice and could recognize it on the telephone, and that she did recognize it when he telephoned her between 10 and 11 p.m. on the night in question, and that when he telephoned "He called and he say, 'What happened?' I say, 'You ought to know, you did it.' And he said, 'Did he die; is he dead?' I said, 'Yes, he is; you ought to give yourself up.' And he say, 'I will not give myself up until I consult with my lawyer; I'm going to consult with my lawyer before I give myself up.' "

A pathologist testified that he performed an autopsy on the body of the deceased and then expressed the opinion that the deceased had been stabbed with a sharp instrument two inches in width in the neck to a depth of two inches that severed three large blood vessels including the jugular vein and both carotid arteries and which caused him to bleed to death. He further testified that in his opinion the instrument used to inflict the wounds on the body of the deceased could have been a knife.

Appellant did not testify or offer any testimony in his behalf.

We conclude that the facts and circumstances are sufficient to warrant the jury's findings that the appellant with malice killed the deceased by cutting and stabbing him with a knife as charged in the indictment and exclude every other reasonable hypothesis except that of the guilt of the appellant.

Appellant contends that the trial court erred in permitting

the witness Burch over his objection to testify to the name of the assailant because she had testified that she could not identify him.

The witness Burch testified that on the first encounter the deceased said, "Go on, Monroe, I want nothing to do with you." To this statement there was no objection. Further, she stated that during the attack she stepped between them and said, "Monroe, go on, leave him alone." This statement was res gestae of the attack. She at no time identified the appellant or the person who attacked the deceased as the same person referred to during the attack as Monroe. No error is shown.

In his brief appellant insists that the state's attorney's conduct during the examination of the witness Salvador Chavarria after he had failed to identify the appellant in the court room upon three requests to look for him, in leaping to his feet and pointing to the appellant and screaming, "Salvador, do you recognize this man?" was improper and prejudicial.

The record shows that state's counsel pointed his finger toward the appellant when he asked the question but it fails to show the other matters complained of. The question was not answered. The court sustained appellant's objection thereto but refused his request for a mistrial. Under the record we perceive no error.

Appellant contends that he was denied the right to close or to offer rebuttal testimony.

The record shows that when the attorney for the state announced to the court that the "State rests," appellant's attorney immediately said, "We rest, your Honor."

There was no request or motion by the appellant to offer testimony or re-open the case or a motion for a continuance in order to present testimony. We perceive no denial of any right on this phase of the case.

Finding no reversible error the judgment of the trial court is affirmed.

Opinion approved by the Court.