**Leonard Glenn TAYLOR, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 44064.**

Court of Criminal Appeals of Texas.

Nov. 16, 1971.

Rehearing Denied Jan. 11, 1972.

Robert Bruce Evans, Abilene, for appellant.

Ed Paynter, Dist. Atty., Lynn Ingalsbe, Asst. Dist. Atty., Abilene, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for robbery by firearms. After a verdict of guilty the punishment was assessed by the court at 25 years.

At the outset we are confronted with appellant's contention that the trial judge fundamentally erred in failing to declare a mistrial on his own motion because the in-court identification was so conducive to irreparable mistaken identification that he was denied due process when viewed in light of the totality of the circumstances.

■ This contention is raised only by supplemental brief filed in this court and can be considered only "in the interest of justice." See Article 40.09, Sec. 13, Vernon's Ann.C.C.P. We conclude, however, that the same requires review.

Harry Schneider, 23 year old college student, testified he left his place of employment, Colonial Food Store in Abilene, about 10:30 p. m. on December 23, 1969, after closing and locking the store. He was alone. While opening his car parked nearby and while standing under a bright yellow dock light of the store, a man appeared, placed a pistol to Schneider's temple and said, "Get out of the light." Two other men appeared from behind a trash receptacle and at gunpoint the three robbed Schneider of $40.00, his wallet, cigarette lighter, and other personal items. Before leaving the threesome bound and gagged Schneider. Upon freeing himself Schneider called the police, but a subsequent search of the area failed to reveal the three men. Schneider gave the police a description of the man who appeared under the light and stood about two feet away from him. He was unable to identify the other two. He was shown some photographs but was unable to make any identification. On December 26 and again on December 30, he was shown a display of photographs first by Officer Petty and then by Lt. Davis of the Abilene Police Department. On each occasion identified a photo of the appellant as the man who held the pistol to his head. The appellant was arrested on January 10, 1970.

It appears that at 9 a. m. on the morning of the trial (September 14, 1970) the complaining witness at a courtroom door and

in company with the district attorney and appellant's counsel, viewed six or seven men seated on a courtroom bench 28 feet away. He identified one David Williams as the man who robbed him.

Thereafter on direct examination the complaining witness was asked:

"Q. Mr. Schneider, if you would look at the defendant in this case, Leonard Glenn Taylor. You may, at your request have him stand up, walk around, face you, turn with his back away from you, anything which you desire. If you would, please look at him. Take as much time as you need, and state to the jury whether or not he was the man that held the pistol on you.

"MR. EVANS: Your Honor, we would object at this time to the district attorney pointing out any one individual, and ask the question generally as to whether or not this witness can identify anyone in the courtroom.

"MR. INGALSBE: Your Honor, this is the man on trial here. I think that the identification should be of this man.

"THE COURT: All right, I am going to overrule the objection and let him testify.

"MR. INGALSBE: We request that the defendant stand up, and request that he walk around in front of the table and face Mr. Schneider.

"THE WITNESS: (to the defendant) Turn sideways. The other way.

"MR. INGALSBE: And further request that he say the words 'Get out of the light.'

"THE DEFENDANT: Get out of the light.

"THE WITNESS: O. K.

"MR. INGALSBE: Q. All right, Mr. Schneider, is this the man that held the pistol on you or not?

"THE WITNESS: A. I wasn't sure because, with that pointing out a while ago; but the voice rasp, I won't forget that. He is definitely the man.

"Q. This Leonard Glenn Taylor is the man that held the pistol on you and robbed you?

"A. Yes, sir.

"Q. Is there any doubt whatsoever in your mind?

"A. No, sir."

Thereafter Schneider related he had twice identified the appellant from photographs shown his shortly after the alleged offense.

On cross-examination he acknowledged that he had earlier that day identified Williams as the robber. Appellant's counsel then had Williams stand beside the appellant and elicited from Schneider that the appellant's arms were longer, his hands bigger and that he was 4 inches taller than Williams, that his skin was lighter and there was a difference in the facial features of the two men.

It was then elicited from the complaining witness that after he had identified Williams the district attorney had informed him that he had identified the wrong man, and that the witness had gone and looked on his own.

On re-direct examination he explained that being seated Williams and the appellant appeared to be the same height, that some of the men, specifically the appellant, kept their heads bowed and looked in other directions during the viewing, that the appellant "never did look me straight in the eye." He related that the district attorney had told him only that he had not identified the man on trial, but did not suggest or point out the appellant to him. On both

re-direct and cross-examination he reiterated his testimony that the appellant was his assailant.[1]

Two officers also testified Schneider identified the appellant from photographs.

The appellant did not testify but offered alibi witnesses.

The court charged on the defense of alibi, and while the jury argument is not in the appellate record, we learned from an approved formal bill of exception that identification was vigorously argued to the jury. The verdict rejected the defensive theory.

█ The pretrial identification procedures did not taint the in-court identification and the appellant does not so claim. A pretrial photographic identification will be set aside only where the procedure utilized "[is] so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247. The other pretrial identification was conducted in the presence of defense counsel and resulted in a misidentification which counsel interjected into the evidence and made an integral part of his trial strategy in support of his defensive theory of alibi.

█ It is well established that a witness has a right to view the accused and be positive in his identification. Rutherford v. State, 135 Tex.Cr.R. 530, 121 S.W.2d 342 (1938).

In Moore v. State, Tex.Cr.App., 424 S.W. 2d 443, this court said:

"We know of no law which prohibits a court from requiring that a defendant sit at the counsel table with his attorney during the trial. Nor do we know of any law which prohibits state's counsel from pointing to a defendant in the courtroom and referring to his physical appearance in the presence of witnesses." Cf. Monroe v. State, 166 Tex.Cr.R. 306, 313 S.W. 2d 610.

█ And it has been held proper *during a trial* to require the defendant to stand, put on a hat, remove his glasses or make a footprint for the purpose of identification. Gallaher v. State, 28 Tex.App. 247, 12 S.W. 1087 (Court of Appeals, 1889); Benson v. State, Tex.Cr.App., 69 S.W. 165 (1902); Rutherford v. State, supra; Walker v. State, 7 Tex.App. 245 (1870); 171 A.L.R. 1144 (1947); Texas Law of Evidence, McCormick and Ray, Vol. I, Sec. 431, pp. 361, 362. Cf. Turman v. State, 50 Tex.Cr. R. 7, 95 S.W. 533 (1906), overruled in Long v. State, 120 Tex.Cr.R. 373, 48 S.W.2d 632, 634 (1932). See Key v. State, 149 Tex.Civ. App. 200, 192 S.W.2d 563 (1946). Of course most of the questions of forcing the accused to aid in his identification have arisen in connection with acts taking place prior to trial and the subsequent testimony of a witness who conducted or observed the experiment, Texas Law of Evidence, supra. In United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, the Supreme Court said:

"We have no doubt that compelling the accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of the accused to give evidence having testimonial significance. It is compulsion of the accused to exhibit his physical characteristics, not compulsion to disclose any knowledge he might have. It is no different from compelling Schmerber to provide a blood sample or Holt to wear the blouse, and, as in those instances, is

---

1. On re-direct:
"Q. Is there any question in your mind at this time that Leonard Glenn Taylor is the one that robbed you?
"A. No, sir."
On cross:
"Q. Mr. Schneider at this, I am going to ask you one more time, do you know which one of these men robbed you?
"A. Yes, sir, sure do.
"Q. Would you like to see a conviction in this case?
"A. Yes, sir, because he is the man that did it."

not within the cover of the privilege. Similarly, compelling Wade to speak within hearing distance of the witnesses, even to utter words purportedly uttered by the robber, was not compulsion to utter statements of a 'testimonial' nature; he was required to use his voice as an identifying physical characteristic, not to speak his guilt. * * * We recognized that 'both federal and state courts have usually held that * * * [the privilege] offers no protection against compulsion to submit to fingerprinting, photography, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture.' Id., [Schmerber v. California, 384 U.S. 757], at 764, 86 S.Ct. [1826] at 1832 [16 L.Ed.2d 908, at 916]."

In light of Beachem v. State, 144 Tex.Cr. R. 272, 162 S.W.2d 706, there may be a question of the violation of self-incrimination privilege of the Texas Constitution. There the accused prior to trial was required to utter certain words allegedly spoken by the robber to give a witness present at the robbery scene further grounds upon which to base her identification. When this evidence was used in court it was held to violate the state constitution. This view has been severely criticized. Comment, 21 Tex.L.Rev. 272; Texas Law of Evidence, supra; Cf. Lucas v. State, 160 Tex.Cr.R. 443, 271 S.W.2d 821 (1954); 24 A.L.R.3d 1261.

■ Even if requiring the appellant to say "get out of the light," the exact words allegedly spoken at the time of the offense, was a violation of the privilege against self-incrimination, it should be remembered that constitutional rights may be waived by conscious decisions of trial strategy. Henry v. Mississippi, 379 U.S. 443, 450–451, 85 S.Ct. 564, 13 L.Ed.2d 408, 414, 415 (1965); Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837, 869 (1963); Zerschausky v. Beto, 5 Cir., 396 F.2d 356, 358 (1968).

If there was such error that appears exactly what the appellant did. He objected only to the manner in which the prosecutor asked his question and when it was overruled requested no further relief throughout the remainder of the trial, despite the developing circumstances. He appears to have preferred to incorporate the same into his trial strategy. There is no showing that appellant's counsel first learned on cross-examination that the district attorney had informed the witness of the misidentification. The very form of his questions indicates the contrary.

■ This court has consistently held that a timely objection to identification should be made at the first opportunity. Martinez v. State, Tex.Cr.App., 437 S.W.2d 842; Evans v. State, Tex.Cr.App., 444 S.W.2d 641; Thornton v. State, Tex.Cr.App., 451 S.W.2d 898; Green v. State, Tex.Cr.App., 467 S.W.2d 481. This the appellant did not do nor has any reason for delaying the objection been shown. Martinez v. State, supra; Thornton v. State, supra.

■ The complaining witness had an opportunity to get "a good look" at the appellant under well lighted conditions at the commencement of the robbery. His description given to the police while the appearance of his assailant was fresh on his mind was fairly specific and there is no showing of any discrepancy between such description and appellant's actual appearance. Within a matter of a few days he was able to pick out appellant's picture from those shown him. It is true that almost nine months later he identified another person under the circumstances described, but that fact goes only to the weight of its testimony and not its admissibility, Williams v. State, Tex.Cr.App., 466 S.W.2d 313, and is only a factor to be considered in the overall picture. His identification of the appellant in the courtroom was in the jury's presence and the reliability of properly admitted identification is normally a matter for the jury's consideration.

We simply cannot agree that the in-court identification was so conducive to irreparable misidentification that the appellant was denied due process considering the totality of the circumstances.

 Further, it does not appear that the appellant has considered the effect of his contention that the trial judge should have acted on its motion to declare a mistrial in light of United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). In Jorn it was held that where without manifest necessity a court grants a mistrial sua sponte after jeopardy has attached without such action being requested or at least concurred in by the defendant, the prosecution is barred from trying the defendant again when a plea of former jeopardy is interposed even if the prosecution is not at fault in causing the mistrial. While Jorn was a federal prosecution, it should be remembered that the double jeopardy provisions of the Fifth Amendment of the United States Constitution are applicable to the States by virtue of the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707. And Benton has been accorded full retroactive effect. North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656. See also Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469; Duckett v. State, Tex.Cr.App., 454 S.W.2d 755.

If the trial judge had declared a mistrial sua sponte because of the prosecutor's action he may have forever barred retrial.

Appellant's contention is overruled.

In view of what we have said above, we also overrule appellant's further claims that the court erred in failing to declare a mistrial on its own motion or instruct a verdict of acquittal because the prosecutor coached an essential witness.

 The other grounds of error relate to the court's action in overruling the motion for an instructed verdict based on a claim of insufficient evidence. In light of the evidence discussed above, the contentions are without merit.

The judgment is affirmed.

ODOM, J., concurs in the result reached.