NO. 07-01-0177-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



APRIL 12, 2002



______________________________




ERIC RAMIREZ
, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 242nd DISTRICT COURT OF SWISHER COUNTY;



NO. B3606-0008; HONORABLE ED SELF, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

 Appellant Eric Ramirez was convicted by a jury of burglary of a habitation and the
commission of the felony offense of sexual assault, and the jury assessed punishment at
37 ½ years confinement and a $5,000 fine. By two issues, appellant challenges his
conviction contending the trial court erred (1) in admitting a portion of his testimony given
during a previous revocation proceeding in violation of his right against self-incrimination, 
and (2) in failing to include the lesser included offense of sexual assault in the court's
charge. Based upon the rationale expressed herein, we affirm.

 Appellant does not challenge the legal or factual sufficiency of the evidence. 
Therefore, only the evidence necessary for the disposition of appellant's issues will be
discussed. On the evening of June 24, 2000, appellant burglarized the victim's (1) home.
After appellant entered the victim's home and discovered that she was alone, he engaged
in sexual intercourse with her. The victim's mother, who was away from the home at that
time, did not discover the burglary until the following morning. During the police
investigation, appellant parked his vehicle adjacent to the victim's home, which resulted in
his identification and apprehension. After he was arrested, appellant made a voluntary
written statement admitting that he broke into the home; however, he claimed that sex with
the victim was consensual. At the time of arrest, appellant was on probation for a prior
offense whereupon the State filed a motion to revoke his probation. Appellant was
represented by counsel and testified in his own defense at the probation revocation
hearing.

 Testimony from the revocation hearing was admitted at trial. After his prior
testimony was admitted over the objections of defense counsel, appellant again took the
stand in his own defense. The written statements given to police, the testimony from the
revocation hearing, and the testimony appellant gave at trial were consistent. Appellant
stated that he broke into the home with the intent to steal, but denied any intent to commit
sexual assault. He claimed he engaged in consensual sex with the victim, but confirmed
a prior awareness of the victim's mental retardation. 

 By his first issue, appellant contends the trial court erred in admitting a portion of his
testimony given during the prior revocation proceeding in violation of his right against self-incrimination, irrespective of his taking the stand during the revocation proceeding. 
Appellant contends his prior testimony at the revocation hearing was inadmissible at trial
for any purpose. We disagree.

 A timely and reasonably specific objection is required to preserve error for appellate
review. Tex. R. App. P. 33.1(a); Butler v. State, 872 S.W.2d 227, 236 (Tex.Cr.App. 1994),
cert. denied, 513 U.S. 1157, 115 S.Ct. 1115, 130 L.Ed.2d 1079 (1995). Where the alleged
error relates to the admission of evidence, a timely objection must be made stating the
specific ground of objection. Tex. R. Evid. 103(a)(1); Higgins v. State, 924 S.W.2d 739,
745 (Tex.App.-Texarkana 1996, pet. ref'd ). In addition, the objection at trial must comport
with the error complained of on appeal. Goff v. State, 931 S.W.2d 537, 551 (Tex.Cr.App.
1996), cert. denied, 520 U.S. 1171, 117 S.Ct. 1438, 137 L.Ed.2d 545 (1997). Appellant
objected to the admission of his testimony at the probation revocation hearing on the
grounds that it was hearsay and violated his right against self-incrimination, but his 
objections were overruled. Here, he contends the trial court erred by admitting the
testimony from the probation revocation proceeding as an exception to the hearsay rule
under Rule 801(e)(2)(A) of the Texas Rules of Evidence without considering the
implications of admitting such testimony upon his right against self-incrimination contained
in the United States and Texas Constitutions. It is uncertain from his argument whether
appellant contests admissibility as an exception to the hearsay rule applying a balancing-test weighed against Fifth Amendment implications, or simply presents two separate
objections from the trial court by one hybrid issue. In the interest of justice, we will
consider each possibility.

 Hearsay is defined as an oral or written "statement, other than one made by the
declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the
matter asserted." Tex. R. Evid. 801(d); Garcia v. State, 868 S.W.2d 337, 339 (Tex.Cr.App.
1993). Rule 802 provides that "hearsay is not admissible except as provided by statute or
these rules." However, Rule 801(e)(2)(A) provides that a criminal defendant's own
statements, when being offered against him, are not hearsay. Tex. R. Evid. 801(e)(2)(A);
Trevino v. State, 991 S.W.2d 849, 853 (Tex.Cr.App. 1999). A party's own statements are
not hearsay and they are admissible on the theory that a party is estopped from
challenging the fundamental reliability or trustworthiness of his own statements. Trevino,
991 S.W.2d at 853. The rule recognizes that the out-of-court statements of a party differ
from the out-of-court statements of non-parties and raise different evidentiary concerns. 
Id. Here, the statements offered at trial against appellant were taken from his own sworn
testimony given at a prior proceeding and were therefore a hearsay exclusion; thus, the
trial court did not err in overruling appellant's hearsay objection.

 However, not all statements of a criminal defendant are admissible. For example, 
a statement may not be used as evidence against a defendant unless it was voluntarily
made and free from coercion. See Smith v. State, 547 S.W.2d 6, 8 (Tex.Cr.App. 1977). 
Also, a statement may be admissible for a limited purpose. See Braggs v. State, 951
S.W.2d 877, 883 (Tex.App.--Texarkana 1997, pet. ref'd). A defendant's own statement
may be admissible at one phase of a proceeding, but not be admissible during the
guilt/innocence phase. See Nelson v. State, 765 S.W.2d 401, 403 (Tex.Cr.App. 1989). 
In addition, when testimony is given for a limited purpose such as a suppression hearing,
it may not thereafter be admitted against the defendant at trial on the issue of guilt. 
Brumfield v. State, 445 S.W.2d 732, 737 (Tex.Cr.App. 1969). However, none of these
instances of non-admissibility apply here.

 The Fifth Amendment privilege against self-incrimination, which is binding upon the
states through the Fourteenth Amendment, provides in part: "[n]o person . . . shall be
compelled in any criminal case to be a witness against himself. . . ." U.S. Const. amend.
V; Reese v. State, 877 S.W.2d 328, 335 (Tex.Cr.App. 1994). A concurrent right exists
under the Texas Constitution. Tex. Const. art. I, §10. It is axiomatic that the right against
self-incrimination is to prohibit compulsion of testimony which may expose a person to
criminal prosecution. Reese, 877 S.W.2d at 335.

 However, a criminal defendant's right to not give evidence against himself is subject
to waiver if done knowingly, voluntarily, and intelligently, and might be done by conscious
decisions of trial strategy. See Brown v. State, 617 S.W.2d 234, 236 (Tex.Cr.App. 1981); 
Taylor v. State 474 S.W.2d 207, 211 (Tex.Cr.App. 1971). When a criminal defendant
voluntarily takes the stand to testify in his own defense, he waives his privilege against self-incrimination. See Nelson, 765 S.W.2d at 403.

 Appellant cites Mitchell v. United States, 526 U.S. 314, 119 S.Ct. 1307, 143 L.Ed.2d
424 (1999), Carroll v. State, 42 S.W.3d 129 (Tex.Cr.App. 2001), and Crosson v. State, 36
S.W.3d 642 (Tex.App.-Houston [1st Dist.] 2000, no pet.) in support of his argument that
the trial court's decision to admit his prior testimony over counsel's objection violated his
right against self-incrimination; however, as the State correctly points out, the cases upon
which appellant relies are distinguishable from the instant case. Appellant does not cite
any cases that involve the admission of testimony from a prior revocation hearing where
a defendant voluntarily testified on his own behalf and we have found none.

 Appellant does not contend that his testimony at the probation revocation hearing
was offered for a limited purpose or was either involuntary or coerced. To the contrary, the
reporter's record of the underlying proceeding demonstrates that the testimony was given
by appellant while under direct examination by his own counsel. Accordingly, appellant
waived his privilege against self-incrimination when he took the stand to testify in his own
defense at the probation revocation hearing. Appellant's first issue is overruled.

 By his second issue, appellant contends the trial court erred in refusing to submit
to the jury a charge on the lesser included offense of sexual assault. To determine if a
defendant is entitled to a lesser included offense instruction, a two prong test applies: (1)
the lesser included offense must be included within the proof necessary to establish the
offense charged, and (2) some evidence must exist in the record that would permit a jury
rationally to find that if the defendant is guilty, he is guilty only of the lesser included
offense. Lofton v. State, 45 S.W.3d 649, 651 (Tex.Cr.App. 2001). A defendant's own
testimony that he committed no offense, or testimony which otherwise shows that no
offense occurred at all, is not adequate to raise the issue of a lesser included offense. Id. 
at 652. However, if a defendant either presents evidence that he committed no offense
or presents no evidence, and there is no evidence otherwise showing that he is guilty only
of a lesser included offense, then a charge on a lesser included offense is not required. 
Bignall v. State, 887 S.W.2d 21, 24 (Tex.Cr.App. 1994). The evidence must establish that
if a defendant is guilty, he is guilty only of the lesser included offense. Lofton, 45 S.W.3d
at 652.

 Appellant was charged with burglary of a habitation with the commission of a sexual
assault. During trial, appellant testified that when he broke into the habitation, he "went in
to steal something . . . ." He also testified that the victim consented to sexual relations. 
By his testimony that the sexual relations were consensual, appellant effectively denied the
commission of the lesser included offense, thereby precluding any possibility of a finding 
of the lesser included offense. Therefore he was not entitled to an instruction on the lesser
included offense of sexual assault. Appellant's second issue is overruled.

 Accordingly, the judgment of the trial court is affirmed.

 Don H. Reavis

 Justice


Publish.
1. The victim suffers from mental retardation and at the time of trial was 21 years old.



es any Brady violation, as well as any violation of a discovery
order. Id. Assuming arguendo the challenged evidence was, in fact, Brady material, at no
time after the State disclosed it at trial did appellant request a continuance; therefore, any
Brady violation is waived. Gutierrez v. State, 85 S.W.3d 446, 452 (Tex.App.-Austin 2002,
no pet.). Appellant's first issue is overruled.

 In his second issue, appellant complains his Due Process rights were violated by
an impermissibly suggestive pretrial identification procedure. As we perceive his
argument, because Duong and Gartman utilized appellant's driver's license photo to
confirm he was the person from whom they purchased codeine, their in-court identification
of him was tainted and, thus, inadmissible. We disagree.

 In determining the admissibility of an in-court identification procedure, we employ
a two-step inquiry: (1) whether the out-of-court identification procedure was impermissibly
suggestive; and (2) whether that suggestive procedure gave rise to a very substantial
likelihood of irreparable misidentification. See Simmons v. United States, 390 U.S. 377,
384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968); see also Madden v. State, 799
S.W.2d 683, 695 (Tex.Cr.App. 1990), cert denied, 499 U.S. 954, 111 S.Ct.1432, 113 L.Ed.
2d 483 (1991). An analysis under these steps requires an examination of the totality of the
circumstances surrounding the particular case and a determination of the reliability of the
identification. See Webb v. State, 760 S.W.2d 263, 269 (Tex.Cr.App. 1988), cert denied,
491 U.S. 910, 109 S.Ct. 3202, 105 L.Ed.2d 709 (1989); see also Harvey v. State, 3 S.W.3d
170, 174 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd).

 A single photograph line up is improperly suggestive and viewed with suspicion. 
Johnigan v. State, 69 S.W.3d 749, 752 (Tex.App-Tyler 2002, pet. ref'd) (citing Manson v.
Brathwaite, 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140, 155 (1977)). A
suggestive identification scenario, such as a single photograph line up, is disapproved
because the suggestive line up increases the likelihood of misidentification. Neil v.
Biggers, 409 U.S. 188, 198, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972). However, a
conviction based upon eyewitness identification at trial following a pretrial identification by
photograph will be set aside on that ground only if the photographic identification
procedure was so impermissibly suggestive as to give rise to a very substantial likelihood
of irreparable misidentification. Simmons, 390 U.S. at 384. 

 We consider the following five factors in evaluating the likelihood of
misidentification: (1) the opportunity of the witness to view the criminal at the time of the
crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior
description of the criminal; (4) the level of certainty demonstrated by the witness at the
confrontation; and (5) the length of time between the crime and the confrontation. See
Biggers, 409 U.S. at 199-200. The standard of review requires us to consider the five
Biggers factors, which are all issues of historical fact, deferentially in a light favorable to
the trial court's ruling. Johnigan, 69 S.W.3d at 754. The factors, viewed in this light,
should then be weighed de novo against the corrupting effect of the suggestive pretrial
identification procedure. Loserth v. State, 963 S.W.2d 770, 773-74 (Tex.Cr.App. 1998). 


 Duong and Gartman had ample opportunity to view appellant during their face to
face transactions. Indeed, Gartman conversed with appellant about the potency of the
drugs she was purchasing as well as the reasoning behind the purchase price. Moreover,
Gartman testified she had been trained to carefully scrutinize and remember individuals'
features for later identification. Duong and Gartman each identified appellant's gold teeth
as his distinguishing physical feature. And while the officers were not aware of his real
name, they were certain that the person from whom they purchased codeine on the day
of the offense went by the nickname Bean Papa. Duong and Gartman were also certain
that their pretrial and in-court identification of appellant as Bean Papa was accurate. 
Duong averred he "positively I.D.[ed]" the person from whom he purchased codeine from
the photo he viewed after the offense, and was "absolutely" sure that person was the same
person he identified at trial. Finally, while over two years had passed between the offense
and the date of trial, the officers expressed no concern over their ability to accurately
identify the person from whom they purchased codeine. Considering the totality of the
circumstances, we find the trial court did not err in admitting the in-court identification of
appellant by Gartman and Duong. Appellant's second issue is overruled. 

 In issue three, appellant contends he was denied the right to confront and cross-examine the State's witnesses. He claims he was denied his right under Rule 612 of the
Rules of Evidence to inspect and cross-examine Duong and Gartman about the writings
they used to refresh their memories prior to and during trial. We disagree.

 During appellant's cross examination of Duong, the following exchange occurred:

 Duong: Ma'am, I could submit my offense report and base on
my testimony. That's my support for the - what I have
just told you.

 Defense: Have you reviewed that offense report lately?

 Duong: Yes.

 Defense: May I review it?

 Duong: Yes, ma'am.

 State: Your Honor, I have a copy for [the defense].

 Defense: Judge, if you don't mind, I'd like to look at the one he
reviewed.

 Court: Go ahead. I don't know how long it is, but go ahead
and take a look at it.

 State: I'll keep my copy

 Court: You want his copy rather than her copy. Are they one
and the same? Well, check and see if they are one and
the same, so that you can look at [the State's]. I think
that's the way to do it if they are the same report.

 Defense: Judge, she's removing the part of the offense report he
reviewed.

 Court: Then look at his report. That's fine

 State: That's fine.

(Emphasis added). Following the preceding exchange, it appears appellant's attorney was
allowed to review the report Duong prepared and to cross examine him about its contents. 

 Later in the proceedings, defense counsel explained, outside the presence of the
jury:

 . . . During the testimony, when I asked to see Officer Duong's
offense report, I asked to the see the full report that he
reviewed. What was attached to the report he wrote - was
attached a report that the other officer wrote. He reviewed that
whole document before he testified; yet, I was not allowed to
cross-examine him as to what he learned from the other
document that he testified to. . . .


Defense counsel then requested the court "to put that offense report in the hands of Mr.
Duong under seal for an appellate review." The court inquired of the State, "it's my
understanding . . . when Officer Duong testified he was able to look at his report that he
made; and you didn't hold anything back regarding his report, did you?" After the State
responded in the negative, the court denied the request. 

 A similar exchange took place when Gartman testified:

 Defense: I noticed that while you were testifying when you were
asked about the address and a couple of other
questions, that you looked at something in your hand.

 Gartman: Yes, I did.

 Defense: What is that you looked at?

 Gartman: The report. My report.

 Defense: Also known as an offense report?

 Gartman: Correct.

 Defense: May I have a few minutes?

 Court: [State], you will give [the defense attorney] a copy of
the report?

 State: I will give her a copy.

 Defense: Judge, may I at least --

 State: I don't know if she has the other officer's report or not.

 Gartman: I do.

 Court: Just give her your report.

 Defense: May I look and see if there is any notes made on the
report, Judge?

 Court: Well, you can look at her report, yes.

 State: For the record, Your Honor, I'm tendering [the defense
attorney] a copy of the offense report.

 Court: Okay. The record will so reflect.

(Emphasis added).

 Rule 612 is an "entitlement rule." Johnson v. State, 846 S.W.2d 373, 376
(Tex.App.-Houston [1st Dist.] 1992), rev'd on other grounds, 853 S.W.2d 574 (1993)
(referring to former Rule 611, now codified as Rule 612). If a witness uses a writing to
refresh his memory while testifying, the opposing party is entitled: (1) to have it produced
at the hearing or trial; (2) to view it; (3) to cross-examine on it; and, (4) while the party
calling the witness may not introduce the writing, to have it or relevant portions of it
introduced as evidence. Tex. R. Evid. 612; Powell v. State, 5 S.W.3d 369, 380
(Tex.App.-Texarkana, pet ref'd.), cert denied, 529 U.S. 1116, 120 S.Ct. 1976, 146 L.Ed.2d
805 (2000) (referring to former Rule 611, now codified as Rule 612). The purpose of
allowing an adverse party to inspect documents used by a witness to refresh memory
under the rules of evidence is impeachment. Powell, 5 S.W.3d at 381-82.

 On the record before us, there is nothing to establish Duong and Gartman reviewed
one another's reports before testifying at trial. Rather, the record, as manifested in the
excerpts recited above, is brimming with evidence that neither officer reviewed anything
other than his or her report of the events of October 26, 1999. As a result, appellant has
failed to demonstrate even a threshold showing that Duong used Gartman's report to
refresh his memory before testifying, and vice versa. Appellant was not, therefore, entitled
during his cross-examination of Duong to the production, inspection, cross-examination
on, and introduction of Gartman's report. See Johnson, 846 S.W.2d at 376. Likewise,
appellant was not entitled to cross examine Gartman about Duong's report since she did
not testify she reviewed it to refresh her memory. Id. Appellant's right to cross-examination was, thus, not impinged. Cf. Powell, 5 S.W.3d at 381 (trial court error in
refusing to compel disclosure of business records that the witness testified to using in
preparation for trial had constitutional implications because it effectively excluded evidence
which could be used in cross-examination) (Emphasis added). Appellant's third issue is
overruled. 

 By his fourth issue, appellant complains the trial court erred in allowing the chemist
"to testify to the quantification of the drug asserted by the State to meet the criteria set out
in the indictment." We disagree. After asking the chemist about his education and
training, the State inquired, "[o]nce evidence is received in your lab, can you tell us how
it's handled"? Appellant's attorney immediately objected on the basis of "generality," which
objection the court overruled. Thereafter, the attorney queried, "[c]an we have a hearing
on 702 through 5 outside"? The court responded, "No. It's standard procedure that was
applied in this case that's applied in the cases."

 When the State questioned the chemist about the results of his analysis, the
following exchange occurred:

 State: Did your test indicate that the contents of State's Exhibit
1A (substance submitted by Duong) contained
dihydrocodeine?

 Chemist: Yes, ma'am.

 State: And did your tests indicate that the contents of State's
Exhibit 1A was a material, compound, mixture or
preparation that contained limited quantities of not more
than 300 milligrams?

 Defense: Objection, Judge, leading the witness.

 Court: Overruled. He's an expert. I'm going to allow her to
ask that question. 


* * *


 

 State: Let's talk now about the contents of State's Exhibit No.
2B (substance submitted by Gartman) which has the
unique lab number 114 -655. Did you perform the
same analysis on the contents of State's Exhibit No.
2B?

 Chemist: Yes, I did.

 State: And what were the results of that anaylsis?

 Chemist: It is positive for dihydrocodeine.

 State: Again, does that mean that the contents of State's
Exhibit 2B is a material, compound, mixture, or
preparation containing limited quantities --

 Defense: Object to the, again, leading of the witness, Judge. 

 Court: Overruled.

 State: Of not more than 300 milligrams of dihydrocodeine per
100 milliliters per dosage unit with one or more
nonnarcotic units in recognized therapeutic amounts?

 Chemist: Yes. 


 To preserve error for appellate review, a party must make a timely, specific
objection; the objection must be made at the earliest possible opportunity; the complaining
party must obtain an adverse ruling from the trial court; and the issue on appeal must
correspond to the objection made at trial. See Tex. R. App. P. 33.1(a); Dixon v. State, 2
S.W.3d 263, 265 (Tex.Cr.App. 1998). An objection is sufficient to preserve error for
appellate review if it communicates to the trial court what the objecting party wants, why
the objecting party thinks himself entitled to relief, and does so in a manner clear enough
for the court to understand the objection at a time when it is in the best position to do
something about it. Lankston v. State, 827 S.W.2d 907, 909 (Tex.Cr.App. 1992). But
when it appears from the context that a party failed to fairly and effectively communicate
to the trial court the objection, its basis, or the relief sought, the appellant's complaint has
not been preserved. Id. 

 Defense counsel did not challenge the chemist's qualifications to render an opinion
on the weight or concentration of the controlled substance he tested. At best, the trial
court could have inferred that the chemist's qualifications as an expert was the basis for
the objection, even though there is nothing in the record to indicate that such an inference
was made. When she did object, defense counsel argued the State's questioning of the
chemist was "leading"-an objection entirely different from the one advanced on appeal. 
Consequently, because defense counsel failed to clearly notify the trial court of what
appellant wanted and why he was entitled to it, his right to complain on appeal is waived. 
Tex. R. App. P. 33.1; Simmons v. State, 100 S.W.3d 484, 493 (Tex.App.-Texarkana 2003,
no pet.). 

 By his fifth and final issue, appellant claims the evidence is legally insufficient to
sustain his conviction. We disagree. In reviewing legal sufficiency, we view the evidence
in the light most favorable to the verdict, and ask whether any rational trier of fact could
have found beyond a reasonable doubt all of the elements of the offense. See Jackson
v. Virginia, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791-792, 61 L.Ed.2d 560, 576-77 (1979);
see also Santellan v. State, 939 S.W.2d 155, 160 (Tex.Cr.App. 1997). The prosecution
need not exclude every other reasonable hypothesis except the guilt of the accused. 
Sonnier v. State, 913 S.W.2d 511, 516 (Tex.Cr.App. 1995). (7) 

 A person commits the offense of delivery of a controlled substance if he: (1)
intentionally or knowingly; (2) delivers; (3) a controlled substance listed in Penalty Group
3 or 4. See Tex. Health & Safety Code Ann. § 481.114(a); cf. Avila v. State, 15 S.W.3d
568, 573 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (defining the elements of the
offense of delivery of a controlled substance listed in Penalty Group 1). Dihydrocodeine
is a Penalty Group 3 substance consisting of not more than 300 milligrams of
dihydrocodeine, or any of its salts, per 100 milliliters or not more than 15 milligrams per
dosage unit, with one or more active, nonnarcotic ingredients in recognized therapeutic
amounts. Tex. Health & Safety Code Ann. § 481.104(a)(4). Delivery of 28 grams or more
but less than 200 grams of dihydrocodeine as described above is a second degree felony. 
Tex. Health & Safety Code Ann. § 481.114(c).

 Delivery of a controlled substance may be accomplished in one of three ways: by
actual transfer, by constructive transfer, or an offer to sell. See Tex. Health & Safety Code
Ann. § 481.002(8); Jackson v. State, 84 S.W.2d 742, 744 (Tex.App.-Houston [1st Dist.]
2002, no pet.). The State abandoned the offer to sell paragraphs of the indictments in this
case and pursued only the actual and constructive delivery paragraphs. Each jury charge
incorporated the law of parties, thus authorizing the jury to find appellant guilty of delivery
of a controlled substance if he, acting with intent to promote or assist the commission of
the offense, solicited, encouraged, directed, aided or attempted to aid Bailey to commit the
offense. See Tex. Pen. Code Ann. § 7.02(a)(2). 

 The record reveals that on October 26, 1999, undercover officers Duong and
Gartman inquired of Bailey, an individual from whom they had purchased marihuana on
previous occasions, whether he knew where they could purchase "liquid." Duong and
Gartman testified "liquid" was the street name for dihydrocodeine. In response to their
inquiries, Bailey introduced the officers to an individual named Bean Papa, who had gold
teeth. Duong accompanied Bean Papa into Bailey's house where Bean Papa first asked
him how much he wanted to purchase and then provided him with liquid codeine in
exchange for $50. After Duong advised Gartman of his purchase, Gartman went inside
the house where she found Bailey and Bean Papa. Gartman averred that Bailey retrieved
a jar of liquid from appellant, then handed it to her and told her it cost $60. When Gartman
asked Bailey why her jar was less full but cost more than her partner's, Bean Papa
responded that Gartman's "was stronger." At trial, the officers identified appellant as Bean
Papa, the individual with the gold teeth from whom they purchased codeine. Finally, the
chemist who tested the substances testified that each was "a mixture, compound, material,
or preparation that contain[ed] limited quantities of not more than 300 milligrams of
dihydrocodeinone per 100 milliliters per dosage unit with one or more narcotic units in
recognized therapeutic amounts." According to the chemist, one of the controlled
substances weighed 58.18 grams, including adulterants and dilutants, while the other
weighed 107.14 grams. Based upon the preceding evidence, we conclude a rational trier
of fact could have found the essential elements of the crime of delivery of a controlled
substance beyond a reasonable doubt. The evidence is, therefore, legally sufficient. 
Appellant's fifth issue is overruled.

 Accordingly, the judgment, as reformed, is affirmed.


 Don H. Reavis

 Justice



Do not publish.

 






 

 

1. The controlled substance at issue in this case is designated by the Health and
Safety Code as dihydrocodeinone. Tex. Health & Safety Code. Ann. §
481.104(a)(4)(Vernon 2003). From the record, we discern the drug is often denominated
dihydrocodeine or, simply, codeine. 
2. The original sentences were unauthorized by law and, thus, void. Banks v. State,
29 S.W.3d 642, 645 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd).
3. It is the June 20
th sentence from which appellant appeals. As a result, appellant's
premature March 15th notice of appeal relates forward to that judgment. See Tex. R. App.
P. 27.1(b).
4. See Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
5. Although we cite to the current statute, it is substantively the same as that in effect
at the time of the offense.
6. The initials stand for "First Name Unknown, Last Name Unknown." Duong and
Gartman used that moniker in their case reports to identify the individual from whom they
purchased codeine before they knew his true name. 
7. Citing Moore v. State, 640 S.W.2d 300 (Tex.Cr.App. 1988), appellant suggests the
State still bears the burden of excluding every other reasonable hypothesis except that of
the guilt of the defendant. We note, however, the "reasonable hypothesis analytical
construct" was overruled over a decade ago. See Geesa v. State, 820 S.W.2d 154
(Tex.Cr.App. 1991), overruled in part by Paulson v. State, 28 S.W.3d 570 (Tex.Cr.App.
2000).