**Raul PENA, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 01–81–0025–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 31, 1981.

Rehearing Denied Feb. 4, 1982.

Javier L. Correa, Houston, for appellant.

Alvin M. Titus, Houston, for appellee.

Before EVANS, C. J., and BASS and DOYLE, JJ.

EVANS, Chief Justice.

After a jury trial, the appellant was convicted of burglary of a habitation, and his punishment was assessed at 75 years imprisonment. The judgment will be reversed and the cause remanded for a new trial.

In his first ground of error, the appellant contends that the trial court abused its discretion in requiring him to stand before the jury dressed in the ski mask, jacket and

gloves allegedly worn by the burglar. This ground of error must be sustained.

Testifying for the State, Curt Smith, an apartment maintenance man, said that at about noon on March 7, 1980, he was walking to an upstairs apartment where he lived. Upon hearing a burglar alarm go off in another apartment, he contacted the apartment security officer, who lived in a downstairs apartment unit. On the officer's advice, he looked for but failed to find any evidence of a forced entry, and he returned to his apartment, fixed lunch, and began watching television. Again he heard an alarm, and through the open front door of his apartment, he saw a man run up the stairs and into his apartment. The man was wearing an army coat, gloves, blue jeans and a ski mask. When the man saw Smith, he turned and ran out of Smith's apartment and down the stairs. Smith then returned to the security officer's apartment, and together they pursued the man, who still was wearing the ski mask and gloves. The man ran through a parking lot and down some railroad tracks, and upon hearing the officer's call to stop, he turned around, squatted, and fired two shots at his pursuers. The officer returned a shot, and the man again started running down the tracks. Smith and the officer temporarily lost sight of the man, but finally found him hiding in some bushes near a house.

The State's next witness was the security officer, who generally corroborated Smith's story about the beginning of the chase. The officer testified that the man was still wearing the ski mask, jacket, and gloves when he turned around, squatted, and fired the two shots. When he found the man hiding in the bushes, the man knocked him to the ground, where they struggled until he could "hog tie" him. The man asked: "Well, what are you arresting me for? What's wrong? Are you crazy?" The man also told him the police would never be able to prove that he had a gun. The officer testified the gun was never found. On cross examination, appellant's counsel asked the officer:

Q. Did you shoot the defendant?

A. I did not shoot the defendant. I shot at him.

Q. Did you intend to injure the defendant.

A. Yes, sir.

Q. Why?

A. I aimed to kill. That's the only time I draw my revolver.

Q. So you shot at the defendant, is that correct?

A. I shot at the defendant.

Q. My question, Officer, is it not your duty when you shot him back to use the same type of force he was using against you?

A. He shot two shots and I shot one.

Q. Did you injure him?

A. Not at that time, no, sir. No, sir, I did not. When I finally apprehended him we wrestled and I injured myself.

On redirect examination the State asked the officer:

Q. The man that you stopped and hog-tied, and the man that was wearing the ski mask and the jacket, and the man that fired at you, do you see him in the courtroom today?

A. Yes ma'am.

Q. Would you point him out?

A. Right there. He's wearing the same clothes right there.

Q. Those are the same clothes that he had on?

A. The blue shirt and blue pants he had on when I finally got the jacket off of him.

Q. The same shoes?

A. They look about the same. I'm not sure. He has trimmed up his hair and shaved.

Q. Officer Brown, why are you a police officer for the City of Houston?

A. Because I like my job. I like what I'm doing.

Q. Did you think it was unusual for a person to be wearing a ski mask and a heavy coat like that and gloves during the middle of the day on March the 7th of 1980?

A. Yes ma'am. The temperature was in the high 70's or low 80's at that time.

Q. Was it a little scary to see someone dressed up like that in the middle of the day?

A. Suspicious, yes.

Ms. Vonkrosigk: Your Honor, at this time we would ask the Court to order the defendant to put on those clothes.

Mr. Correa: I would object to that, your Honor.

Ms. Vonkrosigk: I want the jurors to see what he looked like on the day he was chasing him on the railroad tracks. It goes to this man's state of mind. I would ask the Court to order the defendant to put them on.

Mr. Correa: I would object to this.

The Court: Overruled.

Mr. Correa: Please note my exception at this time. I would move for a mistrial because I think it is prejudicial at this point.

The Court: Overruled.

Put it on.

(At this time the defendant puts on the articles he is requested to put on.)

Q. When you saw the man running down the railroad tracks and turn around at you and crouch down and point his gun at you and fire, were you scared?

A. Yes, ma'am, I was.

Ms. Vonkrosigk: Pass the witness.

The appellant, an automobile mechanic, subsequently testified that he got off work about 12:30 p. m. and called his wife, who came and picked him up from work because she had the car. They picked up their daughter at school, drove home, and ate. The appellant then drove to the apartment units in question, looking for the apartment of a girl he had met and dropped off there. When he got there, he heard a ringing noise that attracted his attention and saw a door half open, so he walked up and knocked. The door opened, he saw a man come out with a gun "ready to shoot me." He became frightened and "took off." The appellant testified that he had one previous conviction, having served 17 or 18 months in the penitentiary.

On cross examination, the appellant acknowledged that in 1977 he had been convicted of aggravated kidnapping. He also acknowledged that when he put on the ski mask, gloves and coat, the clothing fit him. He denied that he had gone into Smith's apartment and that he had a gun or had fired at Smith and the officer. He testified that Smith and the officer were in the same apartment and that when he saw the officer come to the door with a gun in his hand, he "just panicked and ran." He said that both Smith and the officer had lied about what had happened. He denied that he was wearing the jacket, ski mask and gloves on the day in question, and he said that the first time he had ever seen "the burglar clothes" was when the prosecutor took them out of the box at the trial.

As a general rule, an accused may be required to exhibit his physical characteristics to a witness at the trial for the purpose of identification. Thus, it has been held that an accused might be required to stand up and remove his glasses so that the witness could better view him, and that this did not compel the accused to give evidence against himself. *Rutherford v. State*, 135 Tex.Cr.R. 530, 121 S.W.2d 342 (1938). Similarly, it has been held not to constitute reversible error for an accused to be required during trial to stand, put on a hat, remove his glasses, make a footprint, or speak words used in a robbery, for purposes of identification. *Taylor v. State*, 474 S.W.2d 207, 210 (Tex.Cr.App.1971) and authorities cited.

In the case at bar, however, the appellant was required to put on the ski mask, gloves, and coat, not for identification, but to bolster the officer's testimony that he was frightened when the man shot at him. The record does not suggest any real dispute regarding the identity of the appellant as the person who presented himself at Smith's apartment, was chased by Smith and the officer, and finally apprehended. The fact in controversy was whether the appellant was wearing the ski mask, heavy

jacket, and gloves, as Smith and the officer testified.

In *Benson v. State*, 69 S.W. 165 (Tex.Cr. App.1902), an accused, charged with theft, was required to stand up and put on his hat so that a witness could identify him. The witness was not the victim, but had seen the victim and the accused together on the date of the alleged theft. The accused admitted that he was with the victim on the date in question, so the witness's testimony was unnecessary for purposes of identification. The court held that the trial court had erred in requiring the appellant to put his hat on before the jury, but that the error was harmless because the evidence was withdrawn from the jury.

In the case at bar, the State seeks to justify the trial court's order on the ground that the appellant's cross examination had damaged the officer's credibility, indicating that the officer had used excessive force in shooting at the appellant, and that the State, therefore, was entitled to show how the fearsome appearance of the man in the ski mask had increased the officer's concern about his safety.

In *State v. Thorne*, 59 Utah 208, 117 P. 58 (1911), the Utah Supreme Court reversed the conviction of an accused who had been required to stand before the jury dressed in the overalls, hat, and handkerchief allegedly worn on the night of the shooting. Noting that the defendant's theory of an accidental discharge could have been rebutted by cross examination about his handling of the gun on the occasion in question, the court went on to say:

> But we have looked the record in vain for any useful or proper purpose in compelling the defendant to garb himself as a highwayman and to exhibit himself before the jury as a desperado and after he had been placed in the required attitude to say to him, and compel him to answer, "That is the appearance you made?" on the night in question. It is not made to appear that such portion of the proceeding was illustrative or explanatory of any disputed fact or question in the case. No fact or question is pointed to or referred to which such a proceeding would tend to illustrate or explain. It seems to have been conducted for the purpose only of showing to the jury how the defendant garbed as a highwayman looked and appeared on the night in question. The proceeding conducted for such purpose tended to disturb and arouse to passion the calm and dispassionate minds of inexperienced laymen sitting as jurors, and was improper.

The trial court's order in the case at bar, compelling the appellant to put on the ski mask and other articles of clothing allegedly worn by the burglar, tended to discredit and prejudice the appellant even before any testimony was given on his behalf. In practical effect, this compelled the appellant to give evidence against himself, rebutting by his own involuntary act the presumption that he was innocent of the offense charged. Due to the harmful effect of the ruling, the judgment must be reversed and the cause remanded for a new trial.

■ In his second ground of error, the appellant contends that the trial court erred in citing in its judgment that a deadly weapon had been used in the commission of the burglary because, appellant argues, such was an issue of fact to be determined by the jury.

The Texas Code of Criminal Procedure provides that, except as otherwise provided therein, the jury is to be the exclusive judge of the facts. Tex.Code Crim.Pro. articles 38.04 and 36.13. However, the Code vests in the judge, after conviction or a plea of guilty, the power under certain circumstances to withhold imposition of the sentence and to place the defendant on probation. Tex.Code Crim.Pro. article 42.12, section 3. This power may be exercised by the judge regardless of the jury's recommendation or a prior conviction. Tex.Code Crim. Pro. article 42.12 section 3c. The Code further provides that probation is not available to a defendant adjudged guilty of an offense listed under section 3f(a)(1) or if, as provided under section 3f(a)(2) "when it is shown that the defendant used or exhibited a deadly weapon . . . during the commission

of a felony offense or during immediate flight therefrom." The Code further provides that upon an affirmative finding that a deadly weapon was so used, the trial court shall enter such finding in its judgment.

Where the judgment contains an affirmative finding that a deadly weapon was used, as provided in section 3f(a)(2), article 42.12, the Code further provides that the defendant will not be eligible for release on parole until his actual calendar time served, without consideration of good conduct time, equals one-third of the maximum sentence or 20 calendar years, whichever is less, but in no event shall he be eligible for release on parole in less than two calendar years. Tex.Code Crim.Pro. article 42.12 section 15(b). Thus, the inclusion of a finding in the judgment that a deadly weapon was used in the commission of the offense or during immediate flight therefrom would result in the restriction of the appellant's eligibility for release on parole. The language of Article 42.12 indicates that the legislature intended the judge to make the determination regarding whether a deadly weapon was used by the defendant in the commission of the offense of which he was found guilty by the jury or during immediate flight therefrom. The second ground of error, therefore, is overruled.

Because of the disposition of the appellant's first two grounds of error it is unnecessary to discuss his third ground of error, contending that the trial court erred in overruling his motion for continuance. It is also unnecessary to discuss the grounds of error asserted in his pro se brief, although it should be noted that such asserted grounds of error do not constitute a basis for reversing the trial court's judgment.

For the reasons stated, the trial court's judgment is reversed, and the cause is remanded for a new trial.