**Thomas Elton HOLDER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3–90–307–CR.**

Court of Appeals of Texas,
Austin.

Aug. 26, 1992.

Discretionary Reviews Refused
Dec. 23, 1992.

Thomas Elton Holder, pro se.

Ken Anderson, Dist. Atty., John M. Bradley, Asst. Dist. Atty., Georgetown, for appellee.

Before CARROLL, C.J., and ABOUSSIE and SMITH, JJ.

PER CURIAM.

A jury found appellant guilty of aggravated robbery and assessed punishment, enhanced by a previous felony conviction, at imprisonment for seventy-five years and a $10,000 fine. Tex.Penal Code Ann. § 29.03 (Supp.1992). Appellant represents himself on appeal, having knowingly and voluntarily waived his right to counsel.

On the afternoon of March 29, 1990, James Adams, the manager of Research Boulevard branch of Capitol City Savings, was robbed at gunpoint by a man wearing a cap, a blue denim jacket, and a bandana over part of his face. A small radio transmitter was concealed in a bundle of bills Adams gave the robber. With the aid of this device, police were able to locate and stop appellant as he drove south on Research Boulevard approximately fifteen minutes after the robbery. The stolen money, with the tracking device, was found in a bag in the back seat of appellant's car. The police also found in the car a cap, blue denim jacket, and bandana identified by Adams as being like those worn by the robber. An unloaded BB pistol bearing a strong resemblance to an automatic firearm was located between the driver's seat and the center console of appellant's car.

■ Following his arrest, appellant was placed in a police vehicle and driven to the bank. There, he was identified by Adams as the man who robbed him. In his sixth point of error, appellant contends this one-on-one identification procedure was impermissibly suggestive and that the district court erred by overruling appellant's motion to suppress the identification testimony.

■ While they are often criticized, one-on-one showups are not violative of due process as a matter of law. *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Garza v. State,* 633 S.W.2d 508, 512 (Tex.Crim.App.1982) (opinion on rehearing). The question that must be answered in each case is whether the suggestiveness inherent in the procedure was such as to give rise to a substantial likelihood of irreparable misidentification. *Neil v. Biggers,* 409 U.S. at 198–99, 93 S.Ct. at 381–82; *Jackson v. State,* 657 S.W.2d 123, 127 (Tex. Crim.App.1983); *Capello v. State,* 775 S.W.2d 476, 482 (Tex.App.—Austin 1989, pet. ref'd). Among the factors to be considered in making this determination are: the opportunity of the witness to view the criminal at the scene; the witness' degree of attention; the accuracy of the witness' prior description of the accused; the level of certainty demonstrated at the confrontation; and the length of time between the crime and the confrontation. *Capello,* 775 S.W.2d at 483.

Adams testified that he was in the presence of the robber for two or three minutes. During the time he had a good opportunity to see the robber's face, although the lower portion was obscured by the bandana. The description of the robber Adams gave the police (white male, six feet tall, blue shirt or jacket) accurately described appellant on the afternoon in question. The showup at the bank took place less than an hour after the robbery, and Adams was instantaneous and positive in his identification of appellant. From this evidence, the district court could reasonably conclude that the identification procedure was sufficiently reliable. The court did not err by admitting evidence of the pretrial showup identification.

Because the pretrial identification was shown to be reliable, there was nothing to taint Adams' in-court identification of appellant. In any event, Adams testified that he based his in-court identification on his observation of appellant at the time of the offense. The trial court did not err by admitting the in-court identification.

Much of appellant's argument under this point of error is an attack on Adams' credibility. Appellant argues that because of the bandana and cap worn by the robber, Adams could not have been as positive in

his identification of appellant as he claimed to be. The assessment of Adams' credibility was for the triers of fact: the court at the suppression hearing and the jury at trial. Obviously, they found Adams to be credible witness.

■ Appellant also complains that he was denied his right to counsel at the pretrial identification. But because formal charges had not been brought against appellant at the time of the showup, his right to counsel had not attached under either the United States or Texas Constitutions. *Kirby v. Illinois,* 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972); *Foster v. State,* 787 S.W.2d 385 (Tex.Crim. App.1990). Point of error six is overruled.

■ During the prosecutor's redirect examination of Adams, appellant was required, over objection, to put on the jacket, mask, and cap worn by the robber and to say words ("Give me the money" and "Hurry up") spoken by the robber. After this demonstration, Adams was asked, also over appellant's objection, if there were "any doubt in your mind at all" that appellant was the man who robbed him. Adams said there was not. In his seventh point of error, appellant urges that this episode constituted improper bolstering of the witness and violated his Fifth Amendment privilege against self-incrimination.

■ Appellant's Fifth Amendment claim is without merit. Requiring the defendant to stand, put on items of clothing, or otherwise exhibit his physical characteristics does not violate his privilege against self-incrimination because such demonstrations are not testimonial in character. *Taylor v. State,* 474 S.W.2d 207, 210 (Tex.Crim. App.1971). Similarly, requiring the defendant to speak for the purpose of aiding identification is outside the protection of the Fifth Amendment and Art. I, § 10 of the Texas Constitution. *McInturf v. State,* 544 S.W.2d 417, 420 (Tex.Crim.App.1976).

Under the facts of this cause, the challenged procedure did not constitute improper bolstering. Before the incident of which appellant complains, defense counsel had vigorously sought to discredit Adams' identification of appellant through cross-examination. Among other things, counsel himself put on the cap and bandanna in order to demonstrate to the jury the limited view Adams had of his assailant.[1] Although Adams remained unshaken in his identification of appellant, we find that the attempted impeachment was of a sufficient degree to authorize the alleged bolstering. *See Roney v. State,* 632 S.W.2d 598, 601 (Tex. Crim.App.1982). We also find that the State's demonstration served to rehabilitate the witness on the specific point upon which he had been attacked. *See Sledge v. State,* 686 S.W.2d 127, 129 (Tex.Crim.App. 1984). Appellant's reliance on *Pena v. State,* 630 S.W.2d 686 (1981), *rev'd,* 640 S.W.2d 295 (Tex.Crim.App.1982),is misplaced in light of the Court of Criminal Appeals' apparent disavowal of the reasoning in that opinion. *Pena,* 640 S.W.2d at 297 n. 1. Point of error seven is overruled.

Appellant's first five points of error concern, in one manner or another, the BB pistol used during the robbery. Appellant argues that the trial court erred by admitting the pistol in evidence because the chain of custody was broken (point one); the State's expert was erroneously permitted to express an opinion based on an improper experiment conducted on the pistol (point two); the evidence was insufficient to establish that the pistol is a deadly weapon (point three); the State was erroneously permitted to amend the allegations in the indictment concerning appellant's use of the pistol as a deadly weapon (point four); and the district court erroneously instructed the jury as the State's burden of proof on the deadly weapon issue (point five).

■ We begin with point four. The indictment alleged that, while in the course of committing theft, appellant

---

1. In his brief, appellant claims that after counsel's cross-examination of Adams "it became apparent that [Adams'] identification of appellant was simply unreal or at best very difficult to believe because of the apparent impossibility of anybody being able to identify a face covered up with the robbery disguise."

intentionally and knowingly threaten[ed] and place[d] James Adams in fear of imminent bodily injury and death by using and exhibiting a deadly weapon, namely, a BB pistol, that in the manner of its use and intended use was capable of causing death and serious bodily injury, and said BB pistol was manifestly designed, made and adapted for the purpose of inflicting death and serious bodily injury.

At trial, the State abandoned the allegation that the pistol was manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury, and elected to proceed only on the allegation that the pistol was capable of causing death or serious bodily injury in the manner of its use or intended use. Contrary to appellant's argument, the decision to abandon one of two alternative allegations as to the manner of committing the offense is not an amendment of the indictment within the meaning of Tex.Code Crim.Proc.Ann. art. 28.10 (1989). *Garcia v. State*, 537 S.W.2d 930, 933 (Tex.Crim.App.1976); *Stockton v. State*, 756 S.W.2d 873, 875–76 n. 2 (Tex.App.—Austin 1988, no pet.). Point of error four is overruled.

■ In point of error five, appellant complains that despite being alleged conjunctively in the indictment, the question of appellant's use of a deadly weapon was submitted disjunctively in the court's charge to the jury. That is, the court authorized appellant's conviction for aggravated robbery if the jury found that he "used or exhibited" a weapon that in the manner of its "use or intended use" was capable of causing "death or serious bodily injury." When the indictment conjunctively alleges different methods of committing the offense, it is proper to charge the jury disjunctively. *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex.Crim.App.1991); *Robinson v. State*, 596 S.W.2d 130, 133–34 (Tex.Crim.App.1980). The fifth point of error is overruled.

■ Appellant's first point of error concerns the chain of custody of the BB pistol, which was introduced in evidence as State's exhibit three. Officer Mark Payne identi-

fied the pistol as the one he found while searching appellant's car. Payne testified that he gave the pistol to Officer Steven Mallon. Mallon identified exhibit three as the pistol given to him by Payne. Mallon testified that he took the pistol to the Austin Police Department's evidence room. During cross-examination, Mallon acknowledged that he did not place any identifying mark on the pistol. Calvin Story, a forensic firearms examiner, identified exhibit three as the BB pistol he checked out of the exhibit room for testing. Adams testified that the pistol was "the same" or "very similar" to that wielded by appellant during the robbery.

■ Appellant urges that the pistol was erroneously admitted because the officers who seized the pistol from appellant's car failed to mark it, thus preventing them from identifying the exhibit with absolute certainty; because the State did not account for the time the pistol was in the possession of identification technicians who dusted it for fingerprints; and because the State failed to call a Sgt. Bryant, who Story testified was the person who asked him to examine the weapon. This contention is without merit. When an offered exhibit is readily identifiable, the trial court has broad discretion to admit the exhibit on the basis of testimony that the item is the one in question and is in a substantially unchanged condition. *Hammett v. State*, 578 S.W.2d 699, 708 (Tex.Crim.App.1979). The BB pistol was identified by the officers and by Adams. There is no evidence or allegation of tampering with the pistol. The matters raised by appellant go to the weight of the exhibit as evidence, not to its admissibility. *Foster v. State*, 779 S.W.2d 845, 861 (Tex.Crim.App.1989). Point of error one is overruled.

■ In his second point of error, appellant urges that Story, the weapons expert, should not have been permitted to testify because his "opinion was irreparably tainted in hearsay and tests too dissimilar." Appellant refers to a test in which Story shot a BB from the pistol into a cow's eye. Although this test was discussed during voir dire examination of the witness, no

testimony concerning this test was heard by the jury. Nevertheless, appellant argues that Story's expert testimony concerning the injuries that could be inflicted by the pistol was based on this test. This argument is not supported by the record.

Story testified that exhibit three was a spring-piston BB or pellet pistol. With a device called a chronograph, Story determined that the pistol could shoot a BB with a muzzle velocity of 180 feet per second. He also testified that a projectile travelling at 130 feet per second was capable of penetrating a human eye. Story based this testimony on experiments conducted on human cadavers described in an article he read in a professional publication relied on by experts in his field. From this article and his own experiments, Story concluded that the pistol in question was capable of shooting a BB with a velocity sufficient to penetrate a human eye. Contrary to appellant's assertion, this conclusion was not shown to be based on the allegedly improper experiment with the cow's eye. Point of error two is overruled.

■■■ We now turn to point of error three, in which appellant contends the evidence does not support the jury's finding that he used or exhibited a deadly weapon during the commission of this offense. Because the sufficiency of the evidence must be judged in light of the charge to the jury, *see Boozer v. State,* 717 S.W.2d 608, 610–11 (Tex.Crim.App.1984), this Court must determine if there is sufficient evidence to support the conclusion that the BB pistol was "in the manner of its use or intended use" "capable of causing death or serious bodily injury." Tex.Penal Code Ann. § 1.07(a)(11)(B) (1974).

Adams testified that during the robbery appellant aimed the pistol at him, often holding it less than two feet from his body. At one point, appellant pointed the gun at Adams' face, the end of the barrel coming within a few inches of his eye. Adams testified that appellant's actions placed him in fear of being killed. The State argues that this testimony, together with the expert testimony that the pistol was capable of shooting a BB with sufficient force to

penetrate an eye, is sufficient to support a finding that the pistol in the manner of its use or intended use was capable of causing serious bodily injury. Appellant responds by noting that there is no evidence that the pistol was loaded during the robbery. To the contrary, the evidence is uncontradicted that the pistol was unloaded when it was seized from appellant a few minutes after the robbery, and no BBS or pellets were found in the car or on appellant's person. Appellant contends that because the State failed to prove that the pistol was loaded, it failed to prove that the pistol was capable of causing serious bodily injury in the manner of its use. The State replies that it is irrelevant whether the pistol was loaded or unloaded, but that the jury could reasonably infer that the pistol was loaded at the time of the robbery in any event.

■■■ Under the Penal Code, there are two kinds of deadly weapons. First, there are those instruments that are deadly weapons *by design:* a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury. Tex.Penal Code Ann. § 1.07(a)(11)(A)(1974). Second, there are those instruments that become deadly weapons *by use:* anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. Penal Code § 1.07(a)(11)(B). If an object is shown to be a deadly weapon by design, it is not necessary to prove that the object was really capable of causing death or serious bodily injury, either in the manner of its actual use or in the manner of its intended use. *Thomas v. State,* 821 S.W.2d 616, 620 (Tex.Crim.App.1991). But if the State seeks to prove that an object became a deadly weapon by the manner of its use or intended use, the evidence must establish that the object was capable of causing death or serious bodily injury as so used.

The parties cite us to three reported opinions with facts similar to the one before us. The State relies chiefly on *Campbell v. State,* 577 S.W.2d 493 (Tex.Crim.App.1979), a prosecution for aggravated robbery. The defendant pointed an air-powered .22 caliber pistol at the victim and threatened to

kill him. The opinion is silent as to whether the pistol was loaded at the time of the offense. An expert testified that the pistol was capable of causing the death of a human being when fired at close range. The court held that the evidence was sufficient to support a finding that the pistol was manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury.

In light of the *Campbell* court's holding that the air pistol was a deadly weapon by design, the court's failure to mention whether the pistol was loaded lends no support to the State's position in the cause before us. As pointed out in *Thomas,* if an object is a deadly weapon by design it is irrelevant whether it was actually capable of causing death or serious bodily injury. It is true, as the State points out, that the *Campbell* court went on to say that the pistol was shown to be capable of causing death or serious bodily injury in the manner of its use by the defendant. But this was dicta under the circumstances, and we do not conclude from this that the State did not need to prove that the BB pistol in this cause was actually capable of causing death or serious bodily injury in the manner of its use or intended use by appellant.

The other two opinions are of even less support to the State. *Mosley v. State,* 545 S.W.2d 144 (Tex.Crim.App.1976), was a prosecution for aggravated assault. The defendant pointed an air-powered BB pistol at the victim and threatened to kill her. An expert testified that a projectile fired from the pistol could destroy an eye, but the evidence showed that the pistol was unloaded and was never pointed at the face of the victim. There was other evidence that the pistol constantly misfired, and had a very low velocity when it did fire. The defendant did not attempt to strike the victim with the unloaded pistol. The court concluded that, on this evidence, the pistol was not shown to be a deadly weapon by design or by use: it was not a firearm; it was not manifestly designed, made, or adapted for the purpose of inflicting death

or serious bodily injury; and it was not capable of causing death or serious bodily injury in the manner of its use or intended use.

*Corte v. State,* 630 S.W.2d 690 (Tex. App.—Houston [1st Dist.] 1981, pet. ref'd), was another prosecution for aggravated robbery. The defendant pointed a gas-powered pellet gun at the victim and threatened to kill her. The court stated that because the gun was unloaded, and because it was not used to bludgeon the victim, it was not shown to be capable of causing death or serious bodily injury in the manner of its use or intended use. Nevertheless, the court went on to hold, citing *Campbell,* that the gun was shown to be a deadly weapon, apparently on the theory that it was manifestly designed to inflict death or serious bodily injury.

The expert testimony in this cause establishes that the BB pistol used by appellant, as designed, was capable of shooting a BB at a velocity sufficient to put out an eye. Under *Campbell* and *Corte,* this testimony might have been sufficient to support a finding that the pistol was a deadly weapon by design and thereby relieve the State of the burden of proving that the pistol was really capable of causing serious bodily in the manner of its use by appellant. *Thomas,* 821 S.W.2d at 620.[2] But this cause was tried solely on the theory that the BB pistol was a deadly weapon by use. To prove that the pistol was a deadly weapon under § 1.07(a)(11)(B), the State was required to prove that the pistol was actually capable of causing death or serious bodily injury in the manner of its use or intended use by appellant during the robbery.

Appellant pointed the BB pistol at Adams to threaten him and compel his submission to the robbery. The evidence establishes that the pistol was capable of causing serious bodily injury when so used, but only if it was loaded with BBs. There is no evidence that the BB pistol, if unloaded, was capable of causing serious bodily

---

**2.** Unfortunately, from the State's point of view, its expert witness also testified that the BB pistol was not manifestly designed, made, or adapted

for the purpose of inflicting death or serious bodily injury, effectively preventing the State from relying on § 1.07(a)(11)(A).

injury when pointed at the face of another person. Because the only evidence that the pistol was capable of causing serious bodily injury in the manner of its use by appellant presupposes the pistol was loaded, the State had to prove that the pistol was loaded during the robbery in order to satisfy its burden of proof.

Pointing out that the evidence establishes only that the BB pistol was not loaded when it was seized by the police, the State offers the alternative argument that the jury could reasonably infer from the evidence that the pistol was loaded at the time of the robbery, and that appellant unloaded the pistol and disposed of the BBs during the time between the robbery and his arrest. Because this argument relies on circumstantial evidence to prove that the BB pistol was a deadly weapon in the manner of its use, the evidence must also exclude any reasonable hypothesis to the contrary.[3] It does not. The evidence also supports the reasonable alternative hypothesis that the pistol was in fact unloaded at the time of the offense. We therefore conclude that the evidence does not support the finding that the BB pistol was a deadly weapon in the manner of its use or intended use by appellant.

Because the finding that appellant used or exhibited a deadly weapon during the commission of the robbery is not supported by the evidence, his conviction for aggravated robbery cannot stand. The charge to the jury, however, also authorized appellant's conviction for the lesser included offense of robbery. The sufficiency of the evidence as to this offense is both obvious and undisputed. Therefore, we will reform the district court's judgment to reflect a conviction for robbery. *Bigley v. State,* 831 S.W.2d 409, 415 (Tex.App.—Austin 1992, pet. filed); *see Thorpe v. State,* 831 S.W.2d 548, 552 n. 1 (Tex.App.—Austin 1992, no pet.). Although the punishment assessed does not exceed that authorized for a second degree felony enhanced by a previous felony conviction, we cannot assume that the jury would have assessed the same punishment for the lesser offense. Accordingly, we will remand the cause for a new trial as to punishment.

Appellant's eight and final point of error reasserts his first seven points of error as cumulative error." Having found but one error, there is nothing to cumulate. This point of error is overruled.

The judgment of the district court is reformed to reflect a conviction for robbery. As reformed, the judgment is affirmed as to the adjudication of guilt. We reverse that portion of the judgment assessing punishment and remand the cause for a new trial as to punishment. Tex.Code Crim.Proc.Ann. art. 44.29(b) (Supp.1992).

---

**3.** This cause was tried before the Court of Criminal Appeals announced its opinion in *Geesa v.*

*State,* 820 S.W.2d 154 (Tex.Crim.App.1991).