Robert **DELGADO**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 03–97–00407–CR, 03–97–00502–CR.

Court of Appeals of Texas,
Austin.

Jan. 14, 1999.

---

Verna Victoria Langham, New Braunfels, for Appellant.

Dib Waldrip, Dist. Atty., New Braunfels, for State.

Before Chief Justice ABOUSSIE, Justices JONES and B.A. SMITH.

J. WOODFIN JONES, Justice.

Two juries in separate trials found appellant Robert Delgado guilty of aggravated robbery with a deadly weapon. Tex. Penal Code Ann. § 29.03(a)(2) (West 1994). At the first trial, the district court assessed punishment, enhanced by two previous felony convictions, at imprisonment for life. At the second trial, the jury assessed the same punishment for the second robbery offense. The court ordered that the sentences be served consecutively.

In both causes, appellant contends the State failed to prove that he used a deadly weapon as alleged. He also contends, in each cause, that the district court erred by refusing to declare a mistrial after improper testimony by a State witness. We will overrule these contentions and affirm the judgments of conviction.

The evidence at both trials was substantially the same. On the morning of December 20, 1996, a man wearing dark clothing and a ski mask walked into the Family Credit Service office in New Braunfels. The man was carrying a box, from which he took a black pistol. The man threw the now-empty box on a desk and demanded money. Both the office manager, Lucille Medrano, and an employee, Leticia Ramos, testified that the man punctuated this demand by pointing the pistol at the office workers and threatening to kill them. After the women complied with his demand, the man fled with the cash and with Ramos's purse. Another employee who was present, Toni Gaytan, recognized the robber as her former brother-in-law, appellant Robert Delgado. Appellant does not challenge his identification as the man who robbed Medrano and Ramos.

Police officers responding to the robbery call spotted appellant in an automobile about twenty minutes after the robbery. They followed him to an address on Lorelei Street, where appellant was detained. Appellant had currency in his pocket, and more cash was found under a blanket inside the car. Rachel Juarez, who was driving the car, gave the officers permission to search her residence on Baden Alley. There, the police found a ski mask and clothing matching that worn by the robber. They also found a cardboard box and a black pistol.

The pistol was described at trial as a BB or pellet pistol approximately seven inches long and weighing one to two pounds. Police officers testified that the pistol, which looked very much like a .45 caliber firearm, was capable of firing a projectile with sufficient force to cause death or serious bodily injury if an eye, the temple, or an artery were struck. *See* Tex. Penal Code Ann. § 1.07(a)(46) (West 1994) (definition of "serious bodily injury"). The officers added that the pistol also could be used as a club to cause serious injury. There is no evidence that the pistol was loaded when seized, and both parties assume that it was, in fact, unloaded. There is evidence that appellant purchased the pistol at a local department store on the morning of the robberies, but there is no evidence that appellant bought or possessed pellets or BBs. The witnesses identified the BB pistol at trial as being similar to or looking like the weapon wielded by appellant during the robbery.

In three points of error, appellant contends the State failed to prove that the BB pistol was a deadly weapon. The parties agree that the pistol was not a firearm, and was not shown to be manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury. *See* Tex. Penal Code Ann. § 1.07(a)(17)(A) (West 1994). Instead, the question presented is whether the BB pistol was proved capable of causing death or serious bodily injury in the manner of its use or intended use. *See id.* § 1.07(a)(17)(B). Appellant relies on this Court's opinion in *Holder v. State*, 837 S.W.2d 802, 807–09 (Tex.App.—Austin 1992, pet. ref'd). The State agrees that *Holder* is on point, but urges that it is legally and factually distinguishable.

The relevant facts in *Holder* are very similar to those in these causes. The defendant was arrested fifteen minutes after he robbed the manager of a bank branch office at gunpoint. The weapon used was a BB pistol designed to look like a firearm. A weapons expert testified that the pistol was capable of shooting a BB with enough force to put out an eye, but the pistol was not loaded when the defendant was arrested and no ammunition was ever found. This Court held that because there was no evidence that the pistol, if unloaded, was capable of causing serious bodily injury or death when pointed at another person, the State failed to prove that the pistol was a deadly weapon in the manner of its use or intended use. *Id.* at 808–09. The State argued that the jury could infer from the evidence that the pistol was loaded, and therefore deadly, at the time of the robbery. We did not directly address this contention, responding instead that the circumstantial evidence did not exclude the reasonable alternative hypothesis that the pistol was unloaded. *Id.* at 809.

■ As we noted in *Holder*, that case was tried before the Court of Criminal Appeals announced its decision in *Geesa v. State*, 820 S.W.2d 154, 159–61 (Tex.Crim.App.1991), ending the use of the "reasonable alternative hypothesis construct" in weighing the sufficiency of circumstantial evidence. *Holder*, 837 S.W.2d at 809 n. 3. *Geesa* does apply to the present causes, and therefore we agree with the State that the circumstances need not exclude all reasonable hypotheses inconsistent with guilt in order to support the verdicts. We must determine only whether a rational trier of fact, viewing all the evidence in the light most favorable to the verdict, could have found beyond a reasonable doubt that appellant used or intended to use the BB pistol in a manner capable of causing serious bodily injury or death. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Griffin v. State*, 614 S.W.2d 155 (Tex.Crim.App.1981).[1]

There is evidence that the pistol was capable of firing a pellet or BB with sufficient force to cause serious bodily injury or even death. Appellant held the pistol close to the heads of the robbery victims and threatened to kill them. The evidence is therefore sufficient to support a finding that appellant used or intended to use the pistol as a deadly weapon *if* the pistol was loaded. *See Holder*, 837 S.W.2d at 808. The State argues that the jury could infer that the pistol was loaded from the circumstances: "As the circumstantial evidence illustrates, Appellant not only had the time and opportunity to discard evidence—he did just that. Just as portions of Appellant's disguise were discarded in a manner that prevented the police from locating them, he could have done so with single or multiple BBs or pellets."

The circumstantial evidence cited by the State explains how the pistol, if loaded during the robbery, could have been unloaded when it was discovered. But this evidence, standing alone, does not logically support an inference that the pistol was actually loaded during the robbery. There is other evidence, however, from which the jury could rationally infer that fact. Appellant brandished the pistol, pointed it at the heads of the robbery victims, and threatened to kill them. The jury, as trier of fact, was entitled to take appellant at his word. While the question is a close one, we believe the jury could infer that appellant was capable of making good his threats; that is, that the BB pistol was loaded, and therefore a deadly weapon, during the robbery.

There is also evidence suggesting that appellant intended to use the pistol as a club. At the first trial, Lucille Medrano testified, "I thought he was going to shoot me or he was agitated because he kept asking for the money bags and he was telling us to get down. So I thought he was going to hit me because I could see the gun. I thought, he is going to hit me with the gun because he kept saying to get down or get off the phone or whatever." Medrano was asked, "Other than shooting you, did you think [appellant] might do anything else to you with the gun?" She answered, "Yes. Because he was so close,

---

1. Appellant does not argue that the evidence is factually insufficient to support the jury's finding that the pistol was a deadly weapon. *See Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996); *Stone v. State*, 823 S.W.2d 375, 381 (Tex. App.—Austin 1992, pet. ref'd as untimely filed).

because his voice sounded like he was getting more irritated, you know, demanding the money, demanding the money. I thought he was going to hit me with the gun across my head." At the second trial, Medrano was again asked if she had been afraid appellant might hurt her with the gun other than by shooting her. She gave a similar answer: "Yes, because he was—it seemed like he was getting agitated. I thought he was going to hit me with the gun itself."

In *Mosley v. State*, 545 S.W.2d 144 (Tex. Crim.App.1976), a weapons expert testified that an air pistol's mass was sufficient to cause serious bodily injury if used as a bludgeon, but there was no evidence that the defendant used or threatened to use it in that manner. The expert's testimony alone was held insufficient to support a finding that the pistol was a deadly weapon: "The pistol was not a deadly weapon as a bludgeon. A pistol is deemed a deadly weapon in this manner only if it is actually used to strike at the victim." *Id.* at 145 n. 2. In the present cause, while Medrano did not testify that appellant struck her or attempted to strike her with the pistol, she did testify that appellant's actions caused her to fear that he would do so. Her testimony, together with the evidence that the pistol was of a size and weight that made it capable of inflicting serious bodily injury if used as a club, rationally supports a jury finding that appellant intended to use the pistol as a deadly club or bludgeon. Points of error one, two, and three are overruled.

■ Appellant's remaining points of error complain of prejudicial references to his criminal record by State witnesses during the guilt stage of his trials. During the first trial, Toni Gaytan was asked by the prosecutor how long she had known appellant and his family. She answered that she had known appellant's brother all her life and, "Well, I have known [appellant], too. But not 'known' him because he has been in prison; but I have known him." The court sustained appellant's objection and instructed the jury to disregard the witness's statement, but overruled appellant's motion for mistrial.

■ As a general rule, a prompt instruction to disregard inadmissible testimony will

be deemed sufficient to cure the error. *Parrish v. State*, 950 S.W.2d 720, 723 (Tex. App.—Fort Worth 1997, no pet.). The record in this cause gives us no reason to deviate from the general rule. We are not persuaded that the district court abused its discretion by overruling the motion for mistrial. Point of error four is overruled.

■ During the second trial, one of the officers who detained appellant at the Lorelei Street address was asked by the prosecutor if appellant explained the large sum of money in the car. The officer answered that he heard appellant say the money was for his bail bond. Appellant objected and the objection was sustained. The prosecutor then asked the officer if appellant said where he got the money. The officer replied that appellant said "his bail person had given him the money." Appellant objected again, the objection was sustained, and the prosecutor was instructed by the court to move to a different subject. The prosecutor's next question was if appellant had told the officer that the money came from a family member. The officer answered, "Yes, sir. I was informed … Mr. Delgado's father had given him that money and that was to be used for bail purpose—." Appellant objected for the third time and requested a mistrial. The court recessed the trial for lunch and, after the jury was removed, forcefully admonished the witness against "trying to taint this jury against this guy by trying to put some other offense he had to post bail for up in front of them." The court then overruled the motion for mistrial. After lunch, the court instructed the jury to disregard all of the witness's previous testimony. The court told the jury, "There was some testimony there was money coming from or going to a bondsman…. I was afraid that might give you the inclination at the time of the stop the Defendant was in some other sort of trouble with the law. He frankly was not. And it angers me that kind of false impression would be given to a jury because it's kind of a cheap shot…. If you will, disregard the entirety of the officer's testimony."

We agree with appellant that the witness's misconduct was more egregious than usual.

But at the same time, the court's admonition to the jury not to consider the improper testimony was more forceful than usual. We believe the jury instruction was adequate to dispel the prejudice, and the court did not abuse its discretion by overruling the motion for mistrial. In any event, the State later adduced testimony regarding appellant's criminal record after appellant, who represented himself at the second trial, opened the door for such testimony during his cross-examination of a witness. In light of this testimony, of which appellant does not complain on appeal, any residual prejudice from the officer's improper testimony was rendered harmless.

By the same point of error, appellant draws our attention to a remark by Leticia Ramos during the second trial. Asked by appellant why she was sure he was the man who robbed her, she replied, "Weren't you proven guilty of being in our office—." Appellant objected but did not obtain a ruling. He did not request a curative instruction or a mistrial. No error was preserved. *See* Tex. R.App. P. 33.1(a). Point of error five is overruled.

The judgments of conviction are affirmed.