NUMBER 13-99-635-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

__________________________________________________________________


LATHANIEL RAUSEAN CALLIS , Appellant,


v.


THE STATE OF TEXAS , Appellee.

__________________________________________________________________


On appeal from the 24th District Court

of Jackson County, Texas.

__________________________________________________________________


O P I N I O N

Before Justices Dorsey, Hinojosa, and Rodriguez

Opinion by Justice Dorsey


A jury convicted appellant, Lathaniel Rausean Callis, of robbery. The trial court found the enhancement paragraph to be
true, made a deadly weapon finding, and sentenced him to ninety-nine years in prison. By one point of error appellant
challenges the legal sufficiency of the evidence to support the trial court's deadly weapon finding. We affirm.

I. Facts


Loretta Olsen worked at a Sonic Drive-in in Edna, Texas. On October 4, 1998, she drove to the bank in order to deposit the
money received from the business. When she reached the bank's depository appellant and Keith Wilkins approached her
car. Wilkins stood at her driver's side window, and appellant stood at the front passenger side window. They pointed
pistols at her and demanded the money. She gave it to them, and they left. Olsen testified that she was scared when the
two robbers pointed the pistols at her. She thought that they were going to kill her. When the State's attorney asked her,
"Were you at that time in fear of imminent bodily injury or death?", she answered affirmatively. 

Keith Wilkins testified that they had used BB pistols to rob Olsen. During direct examination the State's attorney
questioned him as follows:

Q. I want to show you what's been marked for identification purposes as State's Exhibits Three, Four, Five, and Six. Do
these appear to be the same type of B.B. guns that you and Rausean Callis [appellant] used and took when you committed
the robbery of the Sonic on October 4, 1998?



A. Yes, sir.



* * * * *




Q. Do they appear to be the same B.B. guns you and Rausean took with you?



A. Yes, they are.



Officer Woolridge testified that the BB pistols were recovered the day after the robbery. The pistols were loaded at the
time that they were recovered.

Andy Louderback, a captain with the Jackson County Sheriff's Office who had expertise in the use of firearms, testified at
the punishment phase. He tested the BB pistols to determine if they were capable of causing death or serious bodily injury. 
His tests showed that the BBs fired from these pistols penetrated and shattered automobile window glass. His testimony
was that the BB pistols were capable of inflicting death or serious bodily injury.

II. Analysis


Appellant argues that there is no evidence to show that his BB pistol was loaded at the time of the robbery, and therefore,
the trial court erred in finding that he used a deadly weapon. When reviewing the legal sufficiency of the evidence we
apply the standard set out in Jackson v. Virginia, 443 U.S. 307 (1979).

Deadly Weapon 


Texas Penal Code section 1.07(a)(17) defines a "deadly weapon" as: "(A) a firearm or anything manifestly designed, made,
or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or
intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17) (Vernon Supp.
2001). A "BB gun" is usually defined as a smooth-bore air gun firing a .175 caliber shot pellet. See Webster's Third New
International Dictionary 189 (1993). Although it is not a "firearm" and is generally considered to be non-lethal, a BB gun is
capable of causing serious bodily injury and, thus, may constitute a "deadly weapon" as defined in the penal code. See
Delgado v. State, 986 S.W.2d 306, 308 (Tex. App.--Austin 1999, no pet.) (holding there was sufficient evidence to show
BB gun could at close range cause serious bodily injury or death); Misle v. State Farm Mut. Auto Ins. Co., 908 S.W.2d
289, 290 (Tex. App.--Austin 1995, no writ) (where BB gun was fired at plaintiff from a distance of fifteen feet, the BB
penetrated her chest requiring emergency surgery).

Appellant argues that Holder v. State, 837 S.W.2d 802 (Tex. App.--Austin 1992, pet. ref'd) controls the disposition of this
case. In Holder the Austin Court of Appeals held that a BB gun could not be found to be a deadly weapon without proof
that it was loaded at the time it was used in the robbery. Id. at 808-09. However seven years after its holding in Holder the
Austin Court in Delgado v. State, 986 S.W.2d 306 (Tex. App.--Austin 1999, no pet.) was again faced with the question of
whether a BB gun could be held a deadly weapon. In Delgado the court pointed out that the "reasonable alternative
hypothesis" doctrine was no longer used in measuring sufficiency of the evidence. Id. at 308 (citing Geesa v. State, 820
S.W.2d 154, 159-60 (Tex. Crim. App. 1991)). Under that doctrine, in order for the evidence to be sufficient to support a
conviction, the State must have presented evidence that would exclude any reasonable alternative interpretation of the facts
that would render the defendant not guilty. Id. at 308; Geesa, 820 S.W.2d at 159-60. In Holder the court had held that
because the State did not offer evidence excluding the possibility that the BB gun was not loaded, the evidence was
insufficient to support a finding of a deadly weapon. Holder, 837 S.W.2d at 808-09.

However the Delgado Court pointed out that elimination of the "reasonable alternative hypothesis" doctrine meant that the
State only had to produce evidence sufficient to enable the jury to infer that the BB gun was loaded. Delgado, 986 S.W.2d
at 308. The standard for proving a deadly weapon changed. In Delgado the defendant pointed a pistol at office workers,
threatened to kill them, and demanded money. After the robbery the police recovered a pistol, which was described as a
BB or pellet pistol. Police officers testified that the pistol was capable of firing a projectile with sufficient force to cause
death or serious bodily injury. There was no evidence that the pistol was loaded when seized. Witnesses identified the BB
pistol at trial as being similar to the weapon used by the defendant during the robbery. On appeal the defendant argued that
the State failed to prove that the BB pistol was a deadly weapon. The Delgado Court stated that the evidence was sufficient
to support a finding that the defendant used or intended to use the pistol as a deadly weapon if the pistol was loaded,
because "[t]here is evidence that the pistol was capable of firing a pellet or BB with sufficient force to cause serious bodily
injury or even death. Appellant held the pistol close to the heads of the robbery victims and threatened to kill them." Id. at
308. The Delgado Court also pointed out that there was evidence which would allow the jury to rationally infer that the
pistol was loaded during the robbery. The court said that the defendant "brandished the pistol, pointed it at the heads of the
robbery victims, and threatened to kill them." Id.

Thus the Delgado Court held that because the State offered circumstantial evidence upon which the jury could infer that the
BB pistol was loaded, the evidence was sufficient to support a finding that the BB pistol was a deadly weapon. Id. We
must apply the standard in Delgado, not Holder, to the case before us. Thus the evidence is sufficient to support the deadly
weapon finding if there is any evidence upon which the jury could base an inference that the BB pistol was loaded at the
time of the offense. Id.; see also McCain v. State, 22 S.W.3d 497, 503 (Tex. Crim App. 2000) (holding that anything can
be a deadly weapon if in the manner of its use or intended use is capable of causing death or serious bodily injury).

Here appellant pointed the BB pistol at Olsen and demanded the money. The clear intent was a threat of deadly force; i.e.,
if Olsen failed to comply, there would be serious consequences. Olsen testified to her fear upon display of the BB pistol. 
Thus the BB pistol had its intended effect. A day after the robbery the police recovered some loaded BB pistols. When the
State's attorney asked Keith Wilkins if they appeared to be the same BB pistols that he and appellant used, he replied
affirmatively. Further Capt. Louderback testified that these BB pistols could shatter and penetrate automobile window
glass and were capable of inflicting death or serious bodily injury. 

The evidence referred to above would allow a rational factfinder to conclude that appellant's threat was not an idle threat
and that his BB pistol was loaded at the time of the robbery. See Delgado, 986 S.W.2d at 309. We hold that a rational trier
of fact viewing all the evidence in the light most favorable to the verdict could have found beyond a reasonable doubt that
appellant used or intended to use the BB pistol in a manner capable of causing serious bodily injury or death. We hold that
the evidence was legally sufficient to uphold the trial court's finding that appellant used a deadly weapon in the commission
of the robbery. We overrule the sole point of error.

We AFFIRM the trial court's judgment.



______________________________

J. BONNER DORSEY,

Justice



Do not publish .

Tex. R. App. P. 47.3(b).



Opinion delivered and filed

this 2nd day of August, 2001.