**Phillip Leonard DAUGHTERY, Appellant,**

**v.**

**STATE of Texas, Appellee.**

**No. 11–01–00187–CR.**

Court of Appeals of Texas, Eastland.

Dec. 6, 2001.

**914**

Shane Deel, Abilene, for appellant.

James Eidson, Kollin Shadle, Criminal Dist. Atty., Abilene, for appellee.

Panel consists of ARNOT, C.J., and McCALL, J., and DICKENSON, S.J.[1]

Opinion

BOB DICKENSON, Senior Justice.

After Phillip Leonard Daughtery waived his right to a trial by jury and entered a plea of guilty to aggravated robbery, the trial court heard evidence to support the plea and ordered a presentence investigation. There was no plea bargain agreement. After that investigation and after hearing additional testimony, the court sentenced appellant to confinement for 5 years with credit for 346 days of confinement pending trial. We affirm.

*Point of Error*

Appellant presents one point of error which reads in full as shown:

The trial court erred in finding that the evidence was sufficient to support a finding of guilty on the charge of aggravated robbery.

**1.** Bob Dickenson, Retired Justice, Court of Appeals, 11th District of Texas at Eastland

*Evidence at Hearings on Guilty Plea*

Appellant did not sign the "agreement to stipulate testimony" which is often used with pleas of guilty. The reporter's record of the hearing on March 12, 2001, shows that the trial court admonished appellant and made sure that he was voluntarily waiving his right to a trial by jury and voluntarily entering a plea of guilty without a plea bargain agreement. The court then told appellant that the district attorney was going to put on evidence to establish guilt, that they would recess the hearing, that the court would order a presentence report which would take 30 to 45 days, and that there would be another hearing for any additional evidence that the State might have or that appellant and his attorney might have.

The State's first witness was Tina Salas. She testified that she was working as a store clerk at the Allsup's convenience store on Ambler Street in Abilene on May 15, 2000, when the store was robbed at about 4:10 a.m. Salas identified appellant as one of the three men who came into the store that night. Later, appellant came back into the store by himself, and she could "see his gun" and put her hands up. Salas said that appellant pointed the gun at her chest and that she started thinking about her children because she thought he "was going to kill" her. Salas told appellant that he could have the money and gave it to him. After appellant left the store, Salas called the police to see if they had received the alarm which she sent. The dispatcher told her that "somebody was on the way." When the police arrived, Salas described the robber. About 45 minutes later, Salas identified appellant when the police brought him back to the store.

sitting by assignment.

The State's second witness was Jerry Lee Culberson, one of the three men who went into the store on the night of the robbery. When they came out, they sat in the car with a fourth man "for a minute," and then appellant "grabbed a gun" and said:

There ain't nobody here, there ain't no customers, so I think I'm going to go in there and I'm going to get it.

Culberson said that he was surprised when appellant robbed the store. Culberson also identified the "pellet gun" that appellant used. The next morning, they learned that appellant had been arrested. Culberson went to the police to give them a statement after hearing a report that appellant had told the police that they "all robbed the store last night." Culberson did not get any of the money, and he was not charged with anything. Culberson was driving his car that night, but it was not his gun. Culberson did take appellant back to the apartments after the robbery.

The State's third witness, Shane Samson, was the one who had the "pellet gun" which appellant used when he robbed the Allsup's store. Samson was with appellant and two other young men on the night of the robbery. Appellant, Culberson, and Rashad went into the store the first time while Samson stayed in the car. Samson identified the pellet gun which he had in the car with him that night. It is a "BB or pellet gun that you pump up." Samson said that appellant picked up the gun and said that there was no one in the store and that he "was going to rob it." Samson said that he thought appellant was "just joking around about it." Samson testified that appellant came back to the car "about a couple of minutes later" and said that he did it. The driver "got panicky," and they took off. They went back to the apartments, and appellant showed them the money which he got. Samson said that he

did not get any of the money and that he went with Culberson to the police to give them a statement. Samson also was not charged with any offense connected with the robbery. Samson said that he did not recall if the gun had any ammunition in it that evening. Samson said that he took the pellet gun to the police when he went to give his statement.

The State's final witness was Detective James A. Davis of the Abilene Police Department. He testified that he was the detective who investigated "the robbery of the Allsup's convenience store located at 2702 Ambler Avenue" on May 15, 2000. Appellant had already been arrested by a patrol officer when the case was assigned to Detective Davis. Detective Davis interviewed appellant after he had been identified by the convenience store clerk. Appellant agreed to waive his rights to counsel and to give a voluntary statement which reads in part as shown:

My name is Phillip Daughtery. I am 17 years of age. . . . On Sunday I was at my sister's house at Abilene North Apts. There were some other guys there too. When I got ready to go home, I asked the one named Jerry for a ride. We got in his car and he drove to the Allsup's. At the store they wanted me to go in and steal some burritos. I didn't want to do that because the clerk seemed nice. I walked back to the car. Jerry and Rashad went in the store. When they came back, me and the white guy with them had been talking. He wanted me to rob the store. The white dude gave me a BB rifle, it had an Eagle on the side of it. I took the gun back in the store. I pointed the gun at the clerk and she started giving me the money. I didn't say anything to her. I just took the money and ran back to the car.

We all drove off, back to the apartments. I saw a cop drive by so I tried

to get them to take me home. We drove off & saw another cop, so I got out of the car. But he saw me & stopped me. He gave me a ride back to the store and I guess the clerk recognized me.

I would apologize to the clerk, she seemed nice. It wasn't a real gun.

Detective Davis testified that appellant admitted that he had gone into the store and pointed "a BB gun, pellet gun type rifle" at the clerk and took the money. Detective Davis then identified the pellet rifle which had been brought to the police station by Samson. Detective Davis said that the gun could be "pumped" to where it had very near the velocity of a .22 caliber weapon which is capable of causing serious bodily injury or death. His testimony on direct examination by the district attorney reads in part as shown:

Q: That is a Daisy brand pellet gun, slash, BB gun, is it not?

A: Yes.

* * *

Q: In your opinion, is that weapon capable of causing death or serious bodily injury?

A: Very much so.

Q: As a matter of fact, there's a warning to that effect on the gun itself, is there not?

A: There is.

* * *

Q: And what does it say?

A: It says "Warning. Misuse or careless use may cause serious injury or death. For use by ages 16 or older."

During his cross-examination, Detective Davis agreed that there was not any ammunition with the gun when it was brought to the police station. Detective Davis also agreed that the pellet gun was not a firearm. At this point, the State rested. Defense counsel asked to wait on "punishment witnesses" until the punishment hearing which was to be held after the presentence investigation and report.

The reporter's record for the punishment hearing on April 25, 2001, shows that the State had no additional evidence and that appellant's trial counsel called three witnesses to testify. Appellant was the first witness. He testified in support of his application for probation. Appellant also admitted that he "went into that store with the BB rifle" and that he knew then that he would "do some time" if he was caught. Appellant testified that he was eligible for probation and that he had never spent any time in jail before he was arrested for this offense. Appellant admitted that he had spent a "couple of weeks in juvenile" for two arrests for possession of marihuana. He received probation for those two juvenile offenses. Appellant also testified that his father, his aunt, his uncles, his grandparents, his cousin, and his sister were with him to support his application for probation. The second defense witness was appellant's father. He did not testify about the facts of the offense, but he supported appellant's application for probation. The last defense witness was appellant's uncle. He did not testify about the facts of the offense, but he supported appellant's application for probation.

After hearing arguments by the attorneys of record, the trial court announced its ruling in open court, finding appellant guilty of "aggravated robbery" and assessing his punishment as confinement for five years.

### Standard of Review

■ Appellate courts must give great deference to the trial court's "determination of the historical facts that the record

supports." See, e.g., *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Cr.App.1997). The trial court was free to believe all or any part of the testimony of each of the witnesses, and the record supports the trial court's finding that appellant was guilty of the offense of aggravated robbery.

We will discuss all four cases which are cited in appellant's brief. The first case is *Mosley v. State*, 545 S.W.2d 144 (Tex.Cr.App.1976). In that case, the defendant had used "an unloaded B.B. gun"; the record also showed that the gun "constantly misfired," had a very low velocity, and "rarely went over five feet." The court's opinion on rehearing makes it clear that the "device in question" was not a deadly weapon and that the opinion "did not attempt to exclude all types of air guns or pistols from the definition of a firearm." In the case before us, Detective Davis testified that the "Daisy brand pellet/BB gun" was a deadly weapon and also that the gun had a warning label stating that it could "cause serious injury or death."

The next case cited by appellant is *Holder v. State*, 837 S.W.2d 802 (Tex.App.—Austin 1992, pet'n ref'd). In that case, a jury had found the defendant guilty. In the case before us, appellant had entered a voluntary plea of guilty. Also, in *Holder*, the evidence showed that the "air-powered BB pistol" was not loaded. In the case before us, there is no showing that the "pellet/BB gun" was loaded or not. Moreover, in *Holder*, the State's expert witness did not testify that the "air-powered BB pistol" was a deadly weapon. In the case before us, as already noted, Detective Davis did testify that the "Daisy brand pellet/BB gun" was a deadly weapon and quoted the warning on the gun.

The third case cited by appellant is *Coronado v. State*, 25 S.W.3d 806 (Tex.App.—Waco 2000, pet'n ref'd). In that case, the defendant pleaded guilty to the offense of murder, and the evidence showed that two persons were killed in the same criminal transaction. The issue was whether the defendant should have been permitted to withdraw his plea of guilty. In this case, there is no showing that appellant attempted to withdraw his plea of guilty on the basis that it was not a voluntary plea.

The last case cited by appellant is *Adame v. State*, 37 S.W.3d 141 (Tex.App.—Waco 2001, pet'n granted). In that case, the jury convicted the defendant of aggravated robbery. The majority opinion states that the undisputed facts show that the defendant walked into a convenience store concealing a "BB pistol" under his sweatshirt, that he briefly pointed it at the attendant, and that he put it on the counter while the money was removed from the cash register. There was no evidence showing whether the pistol was loaded or not; the majority held that the evidence was legally insufficient to prove that the "BB pistol" was a deadly weapon, citing *Mosley v. State*, supra. The Waco Court of Appeals modified the judgment of the trial court to show a conviction of the lesser included offense of robbery and remanded for a new punishment hearing. We agree with the dissent in *Adame* that the nonverbal threat when the gun was pointed at the clerk was sufficient evidence that the gun was used as a deadly weapon. See also *McCain v. State*, 22 S.W.3d 497, 503 (Tex.Cr.App.2000); *Delgado v. State*, 986 S.W.2d 306, 309 (Tex.App.—Austin 1999, no pet'n).

### This Court's Ruling

The judgment of the trial court is affirmed.